STATE of Minnesota, Respondent,

v.

Anthony DOKKEN, Appellant.

No. 51477.

Supreme Court of Minnesota.

Nov. 13, 1981.

C. Paul Jones, Public Defender, and Susan A. Gray, Asst., Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and Richard D. Hodsdon, Spec. Asst. Attys. Gen., St. Paul, Ronald Schneider, County Atty., Willmar, for respondent.

OPINION

SHERAN, Chief Justice.

The narrow issue presented by this appeal is whether the evidence of defendant

Anthony Dokken's activities is legally sufficient to sustain a jury's verdict finding defendant guilty of false imprisonment as defined in Minn.Stat. § 609.255 (1980). Because the evidence of the central element of defendant Dokken's specific intent to confine or restrain his alleged victim is insufficient as a matter of law, we are constrained to reverse defendant's conviction.

■ When reviewing a conviction on the asserted ground of insufficiency of the evidence, the standards to be applied are well known. We review the evidence with due deference to the jury's verdict, and we will reverse only when all the evidence, viewed in the light most favorable to that verdict, is insufficient as a matter of law to sustain the conviction. *State v. Curtis,* 295 N.W.2d 253, 256–57 (Minn.1980); *State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978); *State v. Bergland,* 290 Minn. 249, 253, 187 N.W.2d 622, 625 (1971). In this case, the evidence is not in dispute; only the legal interpretation to be attached to that evidence is contested.

The events which led to the arrest and conviction of Anthony Dokken arose from Dokken's relationship with a woman and her son. In 1977, Dokken, then 27 years of age, renewed an old acquaintance with them. Soon after, with the permission of the son's stepfather, who held jobs requiring him to be absent for long periods of time, and the mother, the boy began to engage in many activities under the supervision and guidance of defendant. During the next 2 years, the boy and Dokken spent a good deal of time together and, among other activities, went hunting, fishing, horseback riding, and to the movies. Dokken often took photographs of the boy when they were together in this period of time.

On 2 or 3 occasions, in October of 1977 and March of 1978, and for a total of less than 10 minutes, Dokken bound the boy and took four photographs of him with the latter's shirt removed. These snapshots display the boy tied to a bedspring, hanging upside down from a rafter with hands and feet bound, and standing in front of a door with his hands tied above his head and the rope tied to a rafter above him. The boy was 11 years old at the time.

The boy testified at trial that he was never afraid of Dokken and always enjoyed being with defendant, even on the specific occasions that are the basis for this action. While he did not understand Dokken's reasons for binding him, the boy assumed that they were merely "fooling around." On each occasion that Dokken bound the boy and took the photographs, Dokken released him after just 2 or 3 minutes. The boy testified that he never felt that Dokken was attempting to prevent him from leaving if he wanted to leave.

Dokken did not engage in any overt sexual activity during the instances in question, nor was there any evidence of Dokken making any improper advances upon the boy during these brief occasions.

■ The central issue in this appeal[1] is whether Dokken had the requisite intent to confine or restrain the boy on the 2 or 3 occasions in question. The statute which Dokken was found to have violated reads as follows:

Whoever, knowing he has no lawful authority to do so, intentionally confines or restrains a child not his own under the age of 18 years without his parent's or legal custodian's consent, or any other person without his consent, is guilty of false imprisonment and may be sentenced to imprisonment for not more than three years or to payment of a fine of not more than $3,000, or both.

Minn.Stat. § 609.255 (1980). While it is undisputed that Dokken intended to bind the boy in order to take the photographs, there is a complete lack of evidence that Dokken intended specifically to confine or restrain him.[2]

---

1. Because of the nature of our disposition of this case, we do not reach defendant's other assignments of error at trial.

2. On the distinction between general and specific criminal intent, *see* W. LaFave & A. Scott, *Handbook on Criminal Law* 201–02 (1972).

The jury instruction on the element of intent, to which neither party objected, quoted the suggested standard instruction: "To confine or restrain a person is to deprive him of his freedom to go where he pleases and is lawfully entitled to go, or to leave the place where he is." 10 Minn.Dist. Judges Ass'n, Minnesota Practice, CRIMJIG 15.04 (1977). There simply is no evidence that Dokken intended to deprive the boy of his "freedom to go where he pleases." In fact, the evidence strongly suggests the contrary. Each period of confinement was quite brief, lasting no more than a few minutes. The boy never felt as if he were being held against his will.[3] Furthermore, there is no evidence whatsoever to show that Dokken ever continued the restraint after the boy desired his release. Dokken simply did not possess the requisite intent to restrict the boy's freedom of movement against his will. Whatever else Dokken may have done by his reprehensible acts, he did not commit the crime of false imprisonment.

Reversed.

---

**3.** We do not rely on the boy's "consent" to confinement because, as Judge Willette correctly noted at trial, a minor's consent is no defense. Rather, the boy's state of mind and conduct during the brief periods of confinement are stated here only as further evidence of Dokken's specific intent.