STATE of Minnesota, Respondent,

v.

Lazaro MORALES, Appellant.

No. 81–1257.

Supreme Court of Minnesota.

Oct. 1, 1982.

C. Paul Jones, Public Defender, and Jonathan Steinberg, Asst., Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Division, Thomas A. Weist and Richard Osborne, Asst. County Attys., and Beverly J. Wolfe, Staff Atty., Minneapolis, for respondent.

TODD, Justice.

Defendant was found guilty by a district court jury of three counts of criminal sexual conduct in the first degree, Minn.Stat. § 609.342 (1980) (forced penetration accomplished by putting victim in fear of imminent great bodily harm, forced penetration accomplished by use of a dangerous weapon, and forced penetration accompanied by personal injury). The trial court dismissed two of the convictions pursuant to Minn. Stat. § 609.04 (1980), since they all were based on the same act of forced penetration. Departing from the presumptive sentence of 43 (41–45 months) in prison estab-

lished by the Sentencing Guidelines for criminal sexual conduct in the first degree (severity level VIII) when committed by one with defendant's criminal history score (zero), the trial court sentenced defendant to a term of 81 months.[1] Issues on this appeal, in addition to whether the departure was justified, are (1) whether the evidence of penetration was legally insufficient, (2) whether the state met its burden of proving police compliance with *Miranda* before questioning defendant, and (3) whether the trial court erred in failing to submit *sua sponte* the lesser-included offense of criminal sexual conduct in the second degree (sexual contact rather than penetration) with respect to each charge. We affirm.

Around noon on May 30, 1981, a 17-year-old woman, who lived with her parents, was sunning in the backyard when a man she later identified as defendant approached her and asked her for "Bub" or "Bob." Not knowing any such person, she told defendant that he was in the wrong neighborhood.

After defendant apparently left, she went inside briefly, then resumed sunning outside and fell asleep.

Around 12:30 she woke to find defendant standing between her legs. He had opened his zipper and had his penis out and was masturbating. When she tried to back away from him, defendant grabbed her with one hand and choked her so that she could not breathe. In the other hand he held a screw driver above his head in a threatening way. She feared that he was going to kill her and pleaded with him not to. Defendant then let go of her neck and with that hand hit her on the face, causing her to fall back into some rocks. Saying "Take it easy" a number of times, he pulled her a ways, then pulled her shorts down, got on top of her and "started pumping." She testified that she did not resist because she feared that defendant would kill her if she did and because her mother had once warned her to submit in such a situation rather than risk being killed. She testified that she never had had sexual intercourse before that, but that while she was not sure if defendant's penis had completely penetrated her vagina, she was sure that some penetration had occurred. She testified that defendant withdrew his penis after a short time and ejaculated onto her legs and abdomen. He then got up and ran away.

The victim obtained help from neighbors, who summoned police. Police in turn took the victim to the hospital for a standard sexual assault examination.

Defendant was arrested 3 hours later approximately 1 mile from the victim's home. Police seized incriminating evidence from him and, through an interpreter, questioned him. Defendant denied that he had approached or gone behind any house and denied approaching or talking with any girl.

The victim immediately and positively identified defendant's picture from a set of pictures shown her.

At trial defendant claimed that he had met the victim in a bar one night and had had sexual intercourse with her on at least one occasion. He claimed that on the 30th he went to her house to visit her. He claimed that when she saw him she offended him and that he responded by slapping her. He testified that she then yelled and he ran. He denied having any sexual contact with her on the 30th. He also claimed that the police lied in their summary of what he said was when he was questioned.

■ 1. Defendant's first contention is that the evidence that penetration occurred was legally insufficient.

Minn.Stat. § 609.341, subd. 12, (1980), defines "penetration" as

[S]exual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion however slight into the genital or anal openings of the complainant's body or any part of the actor's body or any object used by the actor for this purpose, where the act is committed without the com-

---

**1.** Defendant was also convicted, in a separate proceeding, of receiving stolen property, an offense committed on the same day as the sex offense, and for that offense he was given the presumptive sentence of 1 year and 1 day with execution stayed for 10 years.

plainant's consent, except in those cases where consent is not a defense. Emission of semen is not necessary.

In this case the victim was a sexually inexperienced 17-year-old woman who, when "penetration" was explained to her, stated that she was not sure whether complete penetration had occurred but that she was sure that partial penetration or intrusion into her vagina had occurred. The medical testimony was consistent with this testimony, as was the testimony that defendant was "pumping" up and down after he got on top of her. Also, something happened which caused defendant to ejaculate. Considering all the evidence, we believe that the jury was justified in concluding that penetration in fact occurred. *State v. Steinbrink,* 297 N.W.2d 291 (Minn.1980).

■ 2. Defendant's next contention is that his statement to the police was erroneously admitted because the state failed to prove that defendant was told the nature of the offense about which police planned to question him and that therefore the *Miranda* waiver was invalid.

We need not decide whether a *Miranda* waiver is invalid if police fail to tell the defendant what offense they suspect him of having committed. The reason the prosecutor did not establish at the omnibus hearing that defendant had been told why he was being questioned was that the prosecutor did not know that defense counsel was going to challenge the admissibility of the statement on this particular ground. The trial court could have let the prosecutor recall the officers to question them on this point but the court instead chose to rule that there is no requirement that police inform a suspect why they are interrogating him. We do not reach the issue decided by the trial court because at trial the officer who interrogated defendant specifically testified that he had in fact told defendant, through the interpreter, why he was being questioned. Since the evidence at trial clearly established the legality of the questioning even under defendant's theory of the law, defendant should not be able to avail himself of any failure of proof on this

issue at the omnibus hearing, at least under the circumstances of this case. See *Jensen v. State,* 278 N.W.2d 752, 754 (Minn.1979), which supports this approach. *See also People v. Braden,* 34 Ill.2d 516, 216 N.E.2d 808 (1966).

■ 3. Defendant's next contention is that the trial court erroneously failed to *sua sponte* submit criminal sexual conduct in the second degree as a lesser offense.

The issue is not whether the trial court would have been required to submit criminal sexual conduct in the second degree if defendant had requested it or whether the trial court would have been justified in submitting it over a defense objection that he not submit it. Rather, the issue is whether a defendant who does not request submission of a lesser offense can later obtain a retrial on the ground that it was error not to submit the lesser offense. This issue has been addressed in numerous cases of this court, including *State v. Scheerle,* 285 N.W.2d 686 (Minn.1979), and *State v. Bryant,* 281 N.W.2d 712 (Minn.1979). In both these cases, as well as in other cases, we held that a defendant who does not request submission or object to the lack of submission of a lesser offense forfeits his right to raise on appeal a claim that the lesser offense should have been submitted.

■ 4. The final issue is whether the trial court properly departed from the presumptive sentence of 43 (41–45) months in prison.

In three recent cases—*State v. Partlow,* 321 N.W.2d 886 (Minn.1982), *State v. Luna,* 320 N.W.2d 87 (Minn.1982), and *State v. Martinez,* 319 N.W.2d 699 (Minn.1982)—we have discussed the issue of when and to what extent departure is justified in sex cases. The general approach is that the legislature, to a great extent, has taken the vulnerability of the victims of rape and factors such as age of the victim, the use of knives and threats of death into account in distinguishing rape offenses by degree. However, we have also indicated that each case must be considered on its own.

In *Partlow, Luna,* and *Martinez* we upheld limited departures. Sex cases in which

we have not allowed departure include *State v. Hagen,* 317 N.W.2d 701 (Minn. 1982), and *State v. Erickson,* 313 N.W.2d 16 (Minn.1981).

In this case the rape was, as the trial court noted, typical in some ways. Indeed, in the sense that only vaginal penetration was involved and not any other forms of penetration—such as fellatio, cunnilingus or anal penetration—this case was not as serious as many cases, which often seem to involve two or more kinds of penetration. However, in raping the victim in her back yard, the defendant did not just invade her sexually but also invaded the zone of privacy which surrounded her home. Also, the defendant did not just violate one subdivision of section 609.342 but violated three separate subdivisions. He not only used a dangerous weapon and caused the victim to fear imminent great bodily harm if she did not submit—elements which often go together—but he also inflicted personal injury. In conclusion, we believe that the rape was more serious than the typical rape in that the victim was on her home ground, as was the victim in *Martinez,* and in that the defendant was unnecessarily cruel in that he was not satisfied with scaring the victim into submission but also gratuitously inflicted personal injury. Under the circumstances, we uphold the departure.

Affirmed.