**STATE of Minnesota, Respondent,**

**v.**

**Morris Richard EDWARDS, Appellant.**

**No. CO–85–602.**

Court of Appeals of Minnesota.

Jan. 14, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

Barry V. Voss, Minneapolis, for appellant.

C. Paul Jones, State Public Defender, Anne M. Lewis, Asst. State Public Defender, Minneapolis, for amicus curiae.

Considered and decided by POPOVICH, C.J., and RANDALL and CRIPPEN, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Appellant Morris Richard Edwards appeals from nine convictions. He contends that (1) his previous convictions should not have been admitted into evidence; (2) fingerprint evidence should not have been admitted; (3) the trial court erred in not admitting "reverse *Spriegl*" evidence; (4) there was insufficient evidence to support the jury's verdicts; and (5) there were not substantial and compelling circumstances that justified an upward sentencing departure. We affirm but modify the sentence.

## FACTS

Appellant was charged with numerous crimes against four victims that took place over a four-day period in September, 1984 in South Minneapolis. At that time, appellant was a resident at Freedom House, a treatment and rehabilitation center also located in that area. Appellant was on parole from a life sentence for crimes he committed in Kentucky. Appellant was pa-

roled from Kentucky and placed in Freedom House in June of 1984. After a jury trial, appellant was convicted of nine crimes and sentenced as follows:

| DATE OF OFFENSE | CONVICTION | SENTENCE |
| --- | --- | --- |
| Sept. 16, 1984 | Criminal Sexual Conduct I | 202 months |
| | Criminal Sexual Conduct I | merged |
| | Burglary I | 65 months (concurrent) |
| | Simple Robbery | 38 months (concurrent) |
| Sept. 17, 1984 | Criminal Sexual Conduct I | 45 months (consecutive) |
| | Criminal Sexual Conduct II | 25 months (consecutive) |
| | Aggravated Robbery | none |
| | Burglary I | 38 months (concurrent) |
| | Simple Robbery | 38 months (concurrent) |
| Sept. 20, 1984 | Burglary I | 45 months (consecutive) |

Three months were added to his sentence because he was on parole when he committed these crimes. The trial court stated that his total sentence was 300 months. Appellant's motion for a dispositional departure, i.e. treatment at Minnesota Security Hospital in St. Peter, was denied. The court did recommend that he be considered a candidate for treatment. Appellant is currently incarcerated at Oak Park Heights.

The evidentiary issues at trial were the admission of (1) appellant's prior convictions to impeach his testimony, (2) a fingerprint found on a victim's eyeglasses, and (3) reverse *Spriegl* incidents offered by the defense. The factual issues involved appellant's defenses of identity and alibi.

The State presented testimony from all four victims, another eyewitness, police officers, and a fingerprint expert.

B.W. testified that on the evening of September 16, 1984, she was at her home in Minneapolis. When she answered a knock at her door, she saw appellant. He told her that he was a new neighbor, had lost his dog, and wanted to leave his telephone number so she could call him if she saw the dog. He then pulled out a small gun and pointed it at her. He threatened to kill her and demanded that she give him money, which she did. Appellant then forced B.W. to disrobe and forced her to engage in oral sex. Before leaving, he told her that if she called the police, his friends would hurt her. B.W. positively identified appellant at a live lineup and in court.

S.M. testified that she lived with her roommate, S.L., in an apartment in Minneapolis. On September 17, 1984, S.M. answered a knock at the door. A man told her that he was a neighbor and had lost his dog. When she went to get some paper to write down his number, he followed her into the apartment and pulled a gun. S.M. fell as she tried to escape, and her assailant touched her face and glasses with his hand. Her screams summoned S.L., who had been in her bedroom. The man ordered the women not to look at him and put a nylon stocking over his head. He forced them to get money for him, and then to disrobe. He told S.M. that he was going to shoot her because she had screamed. He inserted his fingers into her vagina and also touched S.L.'s crotch. He asked the women if they were praying; when they said they were, he said "your prayers are answered." Be-

fore he left, he told them that if they called the police, he would return and throw a molotov cocktail through their window.

M.B. testified that on September 20, 1984 at 5:00 p.m. she was in her Minneapolis apartment. She heard a knock on the door and opened it to find appellant. He told her that he had lost his dog and gave a telephone number. When she looked up from writing the number down, she saw a gun pointing at her. Appellant asked if there was anyone else home, and M.B. told him that her husband had gone to the store. Appellant said that if she made any sound he would kill her. He asked her for money, but she didn't have any. He then made her get into bed. As he left, he told her that he would blow her brains out if she called the police.

Joseph Milner was visiting an apartment below M.B.'s and was looking out the window as he waited for someone to return. He saw appellant get into a yellow Opel with the word "Opel" painted on the side in large letters. When M.B. came downstairs and said that someone had tried to rob her, Milner called police and gave them a description of appellant and the vehicle. Appellant was stopped by police within minutes. Milner and M.B. made an in-person identification of appellant, and he was arrested.

Lt. Berven of the Minneapolis Police Department's Bureau of Identification testified as an expert witness on fingerprint identification. He positively identified the print found on S.M.'s glasses as having been made by appellant's right middle finger. He reached this conclusion by comparing the print to several sets of inked prints obtained from appellant. He found twelve "points of identification" and indicated several other possible points. Other officers identified the plastic slide and photograph of the print as having been obtained from S.M.'s eyeglasses. Shortly after the fingerprint was lifted and before appellant was arrested, the victim asked for her eyeglasses back, and the police gave them to her. The print that was taken from the glasses was preserved on a plastic slide and the location of the print photographed. The slide and photograph were made available to the defense. Appellant claims prejudice because he did not also have the actual eyeglasses, and therefore moved to suppress the fingerprint evidence, which motion was denied.

## ISSUES

1. Did the trial court abuse its discretion in refusing to bar the use of appellant's prior convictions to impeach his testimony?

2. Did the trial court abuse its discretion in refusing to suppress fingerprint evidence?

3. Did the trial court err in not admitting "reverse *Spriegl*" evidence?

4. Was there sufficient evidence to support the jury's verdicts?

5. Were there substantial and compelling circumstances that justified an upward durational departure and consecutive sentencing?

## ANALYSIS

### I.

*Prior convictions*

The trial court allowed the State to introduce evidence of prior convictions. Appellant was convicted in Kentucky in 1972 of two counts each of burglary, rape, and immoral practices. He received a life sentence on the rape convictions and five-year concurrent sentences on the other crimes. Appellant argues that the convictions do not reflect on appellant's character for truth or veracity and should not be admitted; or, in the alternative, he should be allowed to stipulate to the fact that he had prior felony convictions.

Minn.R.Evid. 609(a) provides that:

For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable

by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment.

■ An evidentiary ruling by the trial court must be affirmed unless a clear abuse of discretion is shown. *State v. Kvale*, 302 N.W.2d 650, 653 (Minn.1981); *State v. Nunn*, 351 N.W.2d 16 (Minn.Ct. App.1984). In determining whether to restrict the use of a prior conviction other than one involving dishonesty or false statement, a trial court should consider: (a) the impeachment value of the prior conviction, (b) the date of the conviction and defendant's subsequent history, (c) the similarity of the prior conviction with the charged crime, (d) the importance of the defendant's testimony, and (e) the centrality of the credibility issue. *State v. Jones*, 271 N.W.2d 534, 538 (Minn.1978).

The State relies on *State v. Brouillette*, 286 N.W.2d 702 (Minn.1979). There, the supreme court held that a defendant's prior conviction for third degree criminal sexual conduct was admissible to impeach him if he testified because it was "probative of his truthfulness." *Id.* at 708. The defendant in *Brouillette* was being tried on a charge of fourth degree criminal sexual conduct and did not testify in his defense. *Id.* at 704, 705. *See also State v. Bettin*, 295 N.W.2d 542, 546 (Minn.1980) (admission of prior rape conviction to impeach defendant in trial for first and third degree criminal sexual conduct upheld as "indistinguishable" from *Brouillette* ).

The supreme court most recently found no merit in a claim that a defendant was prejudiced by the admission of his prior convictions for rape, adultery, and robbery. *State v. Frank*, 364 N.W.2d 398, 399 (Minn. 1985). The defendant in *Frank* was convicted on two counts of first degree criminal sexual conduct.

■ Here appellant's prior convictions, including burglary, were within the discretion of the trial court to be determined probative of truthfulness. Appellant had only been out of prison a matter of months when he committed these crimes. He testified despite the trial court's ruling that his prior convictions were admissible to impeach him. The jury was entitled to consider his prior crimes in assessing the credibility of his alibi defense. Minn.R.Evid. 609(a). The trial court properly admitted appellant's prior convictions to impeach his testimony.

■ Although the Kentucky felony convictions were twelve years old by the time of appellant's trial, the ten-year decay factor did not prevent their use because appellant had only been released from confinement for those convictions in 1984. Minn.R.Evid. 609(b).

## II.

### *Fingerprint evidence*

Appellant claims that he was denied due process because the State did not preserve the victim's eyeglasses from which a fingerprint identified as his was lifted. The eyeglasses were returned to the victim shortly after the fingerprint was lifted and before appellant was arrested. Appellant was not a suspect until his arrest on September 20th. Although it would have been better practice for the police to relay the victim's request to the prosecuting attorney and have him notify appellant's counsel to see if there was a defense request for the actual glasses, we do not find any bad faith on the part of the investigating officer and we find no prejudice to appellant. It was not apparent to the police when the eyeglasses were returned that there would be a claim that the eyeglasses had exculpatory value. Appellant had access to the plastic slides that the lifted fingerprint was preserved on and the photograph of the location of the print. Appellant made no showing that the availability of the eyeglasses would have made a difference in how the fingerprint testimony was presented, or in what inferences the jury could draw from that testimony.

■ Before the State's conduct violates due process, the evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta,* 467 U.S. 479, ——, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984) (the due process clause of the fourteenth amendment does not require that law enforcement agencies preserve breath samples in order to introduce breath-analysis tests at trial).

■ We find no constitutional violation in the admission of the fingerprint testimony even though the source of the fingerprint, the eyeglasses, were not available to appellant.

## III.

### *"Reverse Spriegl" evidence*

Appellant sought to admit evidence of nine other burglaries, robberies, and rapes that occurred in South Minneapolis after the date of his arrest; he maintained the description of the suspect in those crimes was similar to his description. Appellant is a black male, age 30, height 5'11", with a medium build and a moustache.

The prosecutor complained that he had not received formal notice of the defense's intention to use the other crimes, had not interviewed any of those victims, and that the other crimes were not similar enough. None of the reverse *Spriegl* crimes involved the unique "lost dog" story used by appellant to gain entrance to the victim's homes. The trial court did not admit the evidence.

The leading case on "reverse *Spriegl*" evidence states:

> Where the state has introduced evidence of other crimes to establish identity, the defendant is entitled to rebut the inference that might be drawn therefrom by showing that the crimes have been committed by someone else. He should also have the right to show that crimes of a similar nature have been committed by

some other person when the acts of such other person are so closely connected in point of time and method of operation as to cast doubt upon the identification of defendant as the person who committed the crime charged against him.

*State v. Bock,* 229 Minn. 449, 458, 39 N.W.2d 887, 892 (1949); *see State v. Willis,* 364 N.W.2d 498, 500 (Minn.Ct.App.1985).

In *Bock* the supreme court reversed a defendant's forgery conviction where evidence of other forgeries was admitted to show identity, the defendant had an alibi defense, and the defendant offered testimony of witnesses to the other forgeries and the affidavit of a convicted forger to show that he had not committed the other crimes which was rejected by the trial court. *Bock* at 450–54, 39 N.W.2d at 888–90.

Here appellant sought to introduce the testimony of the victims of various crimes that occurred after his arrest. No offer of proof was made as to the substance of their testimony. *See* Minn.R.Evid. 103(a)(2). Neither did police reports of those crimes include the "lost dog" story appellant used to gain entrance in the crimes charged. In contrast, the evidence of identification in this case was strong: three witnesses positively identified appellant and a single fingerprint identified by an expert as his was found on a victim's glasses. Appellant was arrested just minutes after the third burglary, a few blocks from the scene, in a car which a witness saw him drive from the scene.

■ We hold that the trial court did not err in refusing to admit the reverse *Spriegl* evidence in this case. Such evidence where a defendant produces it must be given the same fair consideration for admission as the State is given when it offers *Spriegl* evidence. This decision lies within the discretion of the trial court and, absent clear abuse, the trial court's evidentiary ruling will not be disturbed on appeal. We find no such clear abuse.

## IV.

### *Sufficiency of the evidence*

In reviewing a claim of insufficiency of the evidence, we are limited to ascertain-

ing whether, given the facts in the record and the legitimate inferences that can be drawn from these facts, a jury could reasonably conclude that the defendant was guilty of the offense charged.

State v. Merrill, 274 N.W.2d 99, 111 (Minn. 1978). The evidence must be viewed in the light most favorable to the prosecution and it is necessary to assume that the jury believed the state's witnesses and disbelieved any contradictory evidence. State v. Wahlberg, 296 N.W.2d 408, 411 (Minn. 1980). Generally, corroboration of the testimony of a complainant in sex crime offenses is not required. Minn.Stat. § 609.-347, subd. 1 (1984); State v. Heinzer, 347 N.W.2d 535, 538 (Minn.Ct.App.1984), pet. for rev. denied (Minn. July 26, 1984).

■ Appellant contends that B.W.'s testimony with respect to the crimes of September 16 was uncorroborated and that he had an alibi at the time of the crimes charged. Her testimony need not be corroborated to support the jury's verdict. Heinzer at 538. Appellant's alibi was based on his testimony, the testimony of fellow residents of Freedom House (who were impeached by their prior convictions), and testimony by members of his family. "[W]eighing the credibility of witnesses is the exclusive function of the jury." State v. Pieschke, 295 N.W.2d 580, 584 (Minn. 1980). There was sufficient evidence for the jury reasonably to conclude that appellant was guilty, and we will not disturb their verdicts on this appeal.

### V.

*Sentencing departure*

Appellant contends that the trial court erred in imposing a double departure of 202 months for his conviction of first degree criminal sexual conduct (Sept. 16), imposing a 45 month sentence for one burglary conviction (Sept. 20), not ordering a dispositional departure, and imposing sentence on two simple robbery convictions.

Appellant was found guilty of two counts of first degree criminal sexual conduct and convicted and sentenced on one count.

That is a severity level VIII offense. Appellant had four criminal history points: three from prior felonies and one because he was on parole. The maximum presumptive sentence under the guidelines was 101 months. The trial court sentenced him to 202 months, a double departure.

The general issue that faces a trial court in deciding whether to depart durationally is whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question.

State v. Back, 341 N.W.2d 273, 276 (Minn. 1983).

[G]enerally, in a case in which an upward departure in sentence length is justified, the upper limit will be double the presumptive sentence length.

State v. Evans, 311 N.W.2d 481, 483 (Minn. 1981). The guidelines include a non-exhaustive list of permissible aggravating factors. Departure is allowed where:

[t]he victim was treated with particular cruelty for which the individual offender should be held responsible.

Minnesota Sentencing Guidelines II.D. 2.b.(2) (1985).

■ This factor alone may be sufficient to justify double departure. State v. Southard, 360 N.W.2d 376 (Minn.Ct.App. 1985), pet. for rev. denied (Minn. April 4, 1985).

Appellant's reliance on State v. Morales, 324 N.W.2d 374 (Minn.1982) for the proposition that the "typical" rape involves multiple penetration is misplaced. Morales upheld an upward departure where the victim was raped at her home and injured, and the defendant violated three separate subdivisions of Minn.Stat. § 609.342. The supreme court said:

Indeed, in the sense that only vaginal penetration was involved and not any other forms of penetration * * * this case was not as serious as many cases, which often seem to involve two or more kinds of penetration.

Morales at 377. This language implies that cases involving multiple penetration

are of a more serious nature. We reject the contention that multiple penetration is "typical".

■ Appellant was found guilty of two counts of first degree criminal sexual conduct for his acts against B.W. There were multiple penetrations of the victim. Appellant put his fingers and then a candle into her vagina and ejaculated into her mouth and onto her back. He repeatedly threatened death. The rape occurred in the victim's home. Substantial and compelling circumstances justified the trial court's imposition of a double durational departure.

■ The State concedes in its brief that the trial court misspoke when it orally sentenced appellant to 45 months for the September 20th burglary. The maximum presumptive consecutive sentence for this conviction would be 25 months, not 45 months. Minnesota Sentencing Guidelines II.F. We therefore modify the consecutive sentence to 25 months for the September 20th burglary. This is consistent with the trial court's intent that appellant receive a total sentence of 300 months.

■ Appellant moved that he be placed in a treatment program at Minnesota Security Hospital in St. Peter. He presented testimony from a doctor, who recommended immediate treatment but did not state that treatment at a prison would be inadequate. The motion was denied. The trial court recommended that appellant be a candidate for treatment in prison. Appellant is incarcerated at Oak Park Heights, which apparently has such a program. A trial court's decision that treatment must be given within the security of a prison is not an abuse of discretion. *State v. DeFoe*, 280 N.W.2d 38, 41 (Minn.1979).

■ A defendant may not be punished twice for the same conduct. Minn. Stat. § 609.035 (1985). Multiple sentences, including concurrent sentences, are barred if the statute applies. *State v. Hagen*, 275 N.W.2d 49 (Minn.1979). In determining whether the protection of section 609.035 applies, the court must ascertain whether the underlying conduct was unitary or divisible. When intent is an element of the offenses, relevant factors include time, place, and motivation; if the underlying conduct was motivated by a desire on the defendant's part to obtain a single criminal objective, then the protection of section 609.035 applies. *State v. Johnson*, 273 Minn. 394, 404, 141 N.W.2d 517, 524–25 (1966).

Appellant contends that he may not be sentenced for both criminal sexual conduct and simple robbery because these crimes were part of a "unitary course of conduct." On these facts we do not agree. The crimes are of a distinct nature and require proof of different facts. *See* Minn.Stat. §§ 609.24, 609.342, and 609.343, (1984 & Supp.1985). This is not a case where a defendant repeatedly committed the same crime over a short period of time. *See Langdon v. State*, 375 N.W.2d 474 (Minn. 1985); *State v. Herberg*, 324 N.W.2d 346 (Minn.1982). Neither is this a case where one crime was committed in furtherance of the other. *State v. Scott*, 298 N.W.2d 67 (Minn.1980).

■ Here appellant was motivated by the desire to both rob and rape his victims. His objectives were twofold: to take their money and to assault sexually. We find that appellant's actions and motives in committing the several offenses were disparate enough to justify multiple sentencing.

## DECISION

The trial court properly admitted appellant's prior convictions for impeachment and properly admitted the fingerprint evidence. While the trial court could have admitted "reverse *Spriegl*" evidence offered by appellant, the refusal to do so was not reversible error. Sufficient evidence supported the jury's verdicts of guilty. Substantial and compelling circumstances justified a double durational departure. We modify the consecutive sentence to 25 months for the September 20th burglary and affirm the total sentence of 300 months.

Affirmed as modified.