Matthew Uche ALIGAH,
Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C4–86–855.

Court of Appeals of Minnesota.

Oct. 7, 1986.

Review Denied Nov. 17, 1986.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., Janet Newberg, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by PARKER, P.J. and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Appellant Matthew Aligah was charged in Stearns County District Court with fourth degree criminal sexual conduct and false imprisonment under Minn.Stat. §§ 609.255, subd. 2 and 609.345(c) (1984). After a jury trial, appellant was acquitted on the criminal sexual conduct charge, but found guilty of false imprisonment. He appeals from the order denying his petition for post-conviction relief [1] and contends that: (1) there was insufficient evidence to support the jury's verdict or the trial court's revocation of his probation; (2) the trial court abused its discretion by admitting *Spreigl* evidence; and (3) he was denied a speedy trial. Aligah also seeks review of his pro se claims. We affirm.

## FACTS

At trial, P.V. testified that she lives across the hall from appellant's apartment. On January 23, 1985 P.V. saw appellant enter her apartment without permission. After she followed him in, he asked if he could see her new baby. P.V. showed appellant the baby, offered him some coffee, and then mentioned that she had left her cigarettes in his apartment, where she had just previously been visiting his wife. When she moved toward the door, appellant stepped in front of her, locked the door, and gave her one of his cigarettes. After they had returned to their coffee appellant said to P.V., "You know, we could have sexual relations." P.V. claimed appellant then had sexual contact with her without consent.

Later that same day, appellant invited P.V. to his apartment and told her he wanted to apologize. P.V. thought she was "protected" in going to his apartment because a friend, Lisa Peterson, was then in her apartment nearby. P.V. took two of her children and a neighbor boy with her to appellant's apartment, but appellant "shuffled all the kids out" and locked the door. He grabbed P.V., pushed her into the living room, threw her onto the couch, held her hands as she struggled with him, and again had nonconsensual sexual contact with her. P.V. asked him to let her go, but he prevented her from leaving "by locking the door in the first place and then holding me there." Appellant released P.V. when one of the children banged on the door and "started to cause commotion." P.V. said she was in appellant's apartment only a few minutes.

Lisa Peterson testified that she was in P.V.'s apartment when P.V. and appellant left alone together. Peterson said that while two of P.V.'s three children were still in the apartment, she did not recall seeing the third child that day. P.V. returned after a few minutes "upset" and "nervous." She told Peterson appellant "had been trying things." Two other witnesses, Kathy Kennedy and Catherine Kurz, testified that P.V. had told them that appellant threw her on his couch and sexually assaulted her.

The State then presented *Spreigl* evidence in the form of testimony from the

---

1. Aligah first appealed (CO–85–1443) from his conviction. We dismissed that appeal so appellant could bring several pro se claims at a post-conviction proceeding.

victims of two previous offenses committed by appellant. The trial court found that evidence was admissible and gave cautionary instructions before each witness testified and in the final instructions to the jury.

J.K. testified that on March 9, 1984 she agreed to go out to dinner with appellant. Instead, he took her to a house in St. Cloud and sexually assaulted her. Appellant was arrested on May 5, 1984, charged with third degree criminal sexual conduct, and released on his own recognizance.

Patricia Pearson testified that she knew appellant as a fellow college student. On May 28, 1984 he showed up at her house and pushed his way in. Appellant forcibly confined Pearson in her home for three hours, terrorizing her with threats of sexual assault and murder. Four days later appellant was charged with false imprisonment and making terroristic threats for his actions against Pearson.

On September 20, 1984 appellant pleaded guilty to both fourth degree criminal sexual conduct, in connection with his assault on J.K., and the false imprisonment of Pearson. He was convicted and sentenced to thirteen years of probation with six months in jail, work release, and credit for time served.

Appellant testified on his own behalf. Although he confirmed that he had pled guilty in the two previous incidents, he maintained that P.V. had consented to sexual intercourse[2] twice on January 23rd. The first time was in P.V.'s apartment. Appellant said that she was the one who locked the apartment door. Later, after three children came into appellant's apartment with P.V., she told her two children to leave while appellant asked the other. P.V. had been in appellant's apartment for about 15 minutes when they "made love the second time."

The jury acquitted appellant of fourth degree criminal sexual conduct, but found him guilty of false imprisonment. He was sentenced to imprisonment for one year and a day. The trial court also found appellant was in violation of probation on his two previous convictions. Probation was revoked and he was sentenced to consecutive terms of 22 months for fourth degree criminal sexual conduct (J.K.) and one year and one day for false imprisonment (Pearson). Appellant's aggregate term of imprisonment was 33 months and one day, less jail credit.

## ISSUES

1. Was there sufficient evidence to support the jury's conclusion that appellant was guilty of false imprisonment and the trial court's revocation of appellant's probation?

2. Did the trial court abuse its discretion by admitting *Spreigl* evidence?

3. Did appellant receive a speedy trial?

## ANALYSIS

1. Appellant was convicted of false imprisonment under Minn.Stat. § 609.255, subd. 2 (1984), which provides:

> Whoever, knowing he has no lawful authority to do so, intentionally confines * * * any other person without his consent, is guilty of false imprisonment * *.

*Id.*

Appellant was acquitted of fourth degree criminal sexual conduct, but found him of false imprisonment. Appellant contends that those two verdicts are inconsistent and the evidence must therefore have been legally insufficient.

In *State v. Juelfs*, 270 N.W.2d 873 (Minn. 1978), the supreme court stated the general rule to be applied upon review of ostensibly inconsistent verdicts:

> [A] defendant who is found guilty of one count of a two count indictment or complaint is not entitled to a new trial or a dismissal simply because the jury found

---

**2.** P.V. delivered her third child by caesarean section on January 10, 1985 and was hospitalized until January 17th; her incision was not fully healed until March. P.V. alleged that sexual contact occurred, not sexual penetration. *See* Minn.Stat. § 609.341, subds. 11 and 12 (1984).

him not guilty of the other count, even if the guilty and not guilty verdicts may be said to be logically inconsistent.

*Id.* at 873–74. This rule is based upon the power of leniency: the jury's ability "to bring in a verdict of not guilty despite the law and the facts." *State v. Perkins,* 353 N.W.2d 557, 561 (Minn.1984). The rule also reflects the function of the jury as the sole judge of credibility. A jury "is free to accept part and reject part of a witness' testimony." *State v. Larson,* 281 N.W.2d 481, 487 (Minn.1979) (citing *State v. Poganski,* 257 N.W.2d 578, 581 (Minn.1977)).

▆ In order to find appellant guilty of false imprisonment the jury had to determine that appellant confined P.V. without her consent. *See* Minn.Stat. §§ 609.255, subd. 2 (1984). P.V. testified that appellant locked the door to his apartment, grabbed her, threw her on the couch, and held her there against her will. Appellant denied that this occurred. In finding appellant guilty of false imprisonment it seems the jury believed P.V.'s testimony over appellant's contrary testimony that P.V. was in his apartment voluntarily. *See State v. Dokken,* 312 N.W.2d 106, 107 (Minn.1981). We cannot assume from the acquittal on the sexual contact charge that the jury disbelieved P.V.'s entire testimony. *See Juelfs,* 270 N.W.2d at 874. Appellant could very well have not had sexual contact with P.V., but still have improperly confined her. Additionally, the jury could have acquitted appellant on one count solely to limit his punishment. *See State v. Juelfs,* 281 N.W.2d 148, 150 (Minn.1979). We conclude that there was sufficient evidence for the jury to find appellant guilty of false imprisonment.

▆ Appellant also contends there was insufficient evidence to support revocation of his probation. Appellant stipulated that the trial court could determine if he violated probation based on the evidence at trial. Both trial and post-conviction courts found clear and convincing evidence of a probation violation. *See* Minn.R.Crim.P. 27.04, subd. 3(3). We agree that there was sufficient evidence in the record to revoke ap-

pellant's probation. *See Doughman v. State,* 351 N.W.2d 671, 674 (Minn.Ct.App. 1984), *pet. for rev. denied* (Minn. Oct. 16, 1984).

2. Appellant next contends the trial court's admission of testimony by the victims of two previous crimes was an abuse of discretion. Appellant must show both error in the trial court's reception of evidence and the prejudice resulting from that error. *See State v. Loebach,* 310 N.W.2d 58, 64 (Minn.1981). In the recent case of *State v. Doughman,* 384 N.W.2d 450 (Minn.1986) the supreme court summarized the standards for admission of such evidence by a trial court and appellate review of those determinations:

> We will not reverse a trial court's admission of evidence of other crimes or bad acts unless an abuse of discretion is clearly shown. However, we have noted that in order for such evidence to be admissible the trial court must determine that there is "clear and convincing" evidence that the defendant participated in the crimes or bad acts sought to be admitted. The court must also determine that the evidence of prior crimes or bad acts is "relevant and material to the state's case." In addition, it must rule that the probative value of the evidence outweighs any potential for "unfair prejudice."

*Id.* at 454 (citations omitted).

▆ Here evidence concerning two previous crimes committed by appellant was admitted to show a common scheme or *modus operandi. See* Minn.R.Evid. 404(b). For example, a central issue at trial was whether appellant intended to confine P.V. without her consent. Evidence of the two previous incidents in which appellant, by pleading guilty, admitted he had acted without the consent of the women involved was relevant and probative on this issue. *See State v. Filippi,* 335 N.W.2d 739, 743 (Minn.1983). Additionally, the prior crimes occurred within ten months of the charged offense while appellant had been in jail for six of those months. The close proximity in time of the past incidents makes evi-

dence of their details even more relevant. *See State v. Billstrom,* 276 Minn. 174, 178–79, 149 N.W.2d 281, 284–85 (1967). Finally, all three incidents were similar in that appellant victimized trusting female acquaintances and confined them for the purpose of satisfying his sexual desires. We conclude appellant has not met his burden of showing that the trial court clearly abused its discretion by admitting evidence of his other crimes.

■ 3. A criminal trial must commence within 60 days after the defendant makes a demand for a speedy trial unless good cause is shown by the prosecution or defendant. *See* Minn.R.Crim.P. 11.10. To determine if appellant received a speedy trial, we must examine four factors: (a) the length of the delay; (b) the reason for the delay; (c) whether appellant asserted his right; and (d) prejudice to the appellant. *See State v. Helenbolt,* 334 N.W.2d 400, 404–06 (Minn.1983); *see also Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

■ a. *Length of Delay.* Here only 79 days elapsed between appellant's demand for a speedy trial and his trial. Such a slight delay does not alone constitute grounds for reversal. *Compare State v. Larson,* 369 N.W.2d 323 (Minn.Ct.App. 1985) (seven month delay was grounds for reversal where State did not show good cause).

b. *Reason for Delay.* A trial date was originally set on April 25, 1985, within the 60 day limit, but defense counsel was unavailable on that date because he was involved in another trial. On May 1, 1985 defense counsel moved to dismiss the charges on the grounds that appellant had been denied a speedy trial. When that motion was denied appellant agreed to a May 14, 1985 trial date. We believe that the unavailability of defendant's counsel is precisely the type of "good cause" contemplated by the Rule.

c. *Appellant's Assertion.* Appellant properly asserted his right to a speedy trial.

d. *Prejudice.* Appellant argues that he was prejudiced because a possible defense witness, Kris Peterson, moved from the state before trial. Yet, defense counsel did not subpoena Peterson or arrange to have her return for trial despite the fact that he knew she was planning to move. Additionally, at the post-conviction hearing counsel testified that it was "hard to say" if Peterson's testimony would have helped appellant's case.

Since only one of the four relevant factors, the assertion of the right to a speedy trial, weighs in appellant's favor we conclude that appellant was not deprived of a speedy trial.

■ Appellant raised a wide variety of claims in his pro se petition for post-conviction relief. The post-conviction court conducted a prolonged evidentiary hearing, at which appellant explained his claims. The trial court fully addressed each of appellant's contentions in the order denying post-conviction relief. We have reviewed the record, appellant's claims, and the findings of the post-conviction court. Based upon that review, we conclude that there was sufficient evidence in the record to support the findings of the post-conviction court and the denial of post-conviction relief. *See Doughman,* 351 N.W.2d at 674.

## DECISION

There was sufficient evidence to support the jury's verdict and trial court's revocation of appellant's probation. Admission of *Spreigl* evidence was not an abuse of discretion. Appellant was not denied a speedy trial, nor entitled to reversal of his conviction based on any of his pro se claims.

Affirmed.