STATE of Minnesota, Respondent,

v.

Thomas NEWMAN, Appellant.

No. CI–86–1672.

Court of Appeals of Minnesota.

June 30, 1987.

Review Denied Aug. 19, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Elizabeth B. Davies, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and SEDGWICK and MULALLY,* JJ., with oral argument waived.

## OPINION

MULALLY, Judge.

Appellant, Thomas Newman, was charged with one count of attempted criminal sexual conduct in the first degree, in violation of Minn.Stat. § 609.342, subd. 1(d) (sexual penetration with use or threatened use of a dangerous weapon), one count of attempted criminal sexual conduct in the third degree, in violation of Minn.Stat. § 609.344, subd. 1(c) (sexual penetration with force or coercion), and one count of assault in the second degree, in violation of Minn.Stat. § 609.222 (assault with a dan-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

gerous weapon). Newman was found guilty of attempted criminal sexual conduct in the first degree and was sentenced to 36 months imprisonment. We affirm.

## FACTS

The incident leading to Newman's conviction occurred at his apartment during the early morning hours of March 28, 1986, following an evening of social visiting between Newman and complainant, Jill Burchill.

In the spring of 1986, Burchill fell $75 behind in her rent. In March, Newman, an acquaintance who lived in the same neighborhood, learned that Burchill had been served with an unlawful detainer notice, phoned Burchill and offered her a loan. On March 19, Burchill accepted a $75 loan. Newman was to deliver the money but failed to appear at Burchill's apartment and again failed to appear at a prearranged meeting in a downtown restaurant.

Later that evening, Newman called Burchill and suggested, as he had previously, that she come to his apartment to pick up the money. Burchill agreed after Newman offered to pay the cab fare, and arrived at Newman's apartment on March 28, 1986, at approximately 9:30 p.m.

After showing Burchill his apartment, Newman told her that he was glad they had finally gotten together. Burchill felt that Newman's comment intimated an interest in a more serious relationship between them, something which she did not desire. Burchill told Newman that she was in love with her boyfriend and that if her relationship with her boyfriend interfered with Newman's decision to lend her the $75, she would leave. Newman, mildly protesting her lack of interest in him, assured her that her boyfriend did not affect the proposed loan.

While Newman and Burchill were talking, Newman received some telephone calls. One of the calls concerned the purchase of cocaine. During another call, Burchill overheard Newman say the word "Uzi" and mention the figure of "150."

Burchill went with Newman to pick up the cocaine. They returned to Newman's apartment and shared one beer and two marijuana cigarettes. Burchill snorted two lines of cocaine and Newman snorted the remaining, larger portion of the cocaine.

After taking the drugs, Newman suggested that they have sex. At first, Burchill thought Newman was joking. When she realized that Newman was serious, she again told Newman she was in love with her boyfriend. Newman said he also had "someone special," but he thought they could have sex anyhow. Burchill refused.

Later, there was a knock on the door. Burchill saw a black man looking in. Newman told Burchill he had "some business to take care of" and asked her to wait in the bedroom. He closed the bedroom door, but it remained partly open. Burchill heard the figure "$150" mentioned and thought Newman might be buying a gun.

Newman returned to the bedroom. According to Burchill, he had an Uzi submachine gun in his hand. Burchill testified it was similar to Uzis she had seen before, but not as big. Newman pointed the gun at Burchill's head and told her to take off her clothes and get into bed. Burchill began to cry. Newman told Burchill he would "backhand" her with the gun if she did not stop crying. Burchill kept asking Newman, "Why are you acting like this?" According to Burchill, Newman said, "I've been waiting two years to do this to you. You're really going to like it. * * * You white women always get everything you want in the world. You deserve to be raped by black men." After saying this, Newman lowered the gun to his side. According to Burchill, Newman put the gun on a shelf, and they walked into the living room where Newman continued to demand that Burchill have sex with him.

While in the living room, Burchill grabbed a large ceramic vase, broke it over Newman's head and attempted to escape from the apartment. She reached the first door, which opened into a foyer, but Newman caught Burchill and threw her to the

floor. They started fighting. Burchill screamed, kicked the television set against the wall and started kicking the floor.

When Burchill again got away from Newman, she ran past the inner door of the foyer to the outside door. The outside door was locked. Burchill thrust her hand through the window and screamed for someone to call the police. Newman and Burchill continued struggling, ending up in a recliner in the living room. Newman put his hand over her mouth and told her not to scream. At that point they saw Shawn Ganley, one of Newman's first floor neighbors, looking at them through the window in the front door. Newman picked Burchill up, took her over to the door, unlocked it and told Shawn Ganley that Burchill had "flipped out" on drugs and asked him to take Burchill home.

Burchill ran past Shawn Ganley and down the stairs. Burchill told Maureen Ganley that Newman had a gun and that he was trying to rape her. Maureen Ganley took Burchill into her kitchen, picked the glass from her cuts, and ran cold water over her hands. Shawn Ganley went upstairs to get Burchill's coat, billfold and a shoe that had come off upstairs and then brought Burchill home.

At trial, the court ruled that if Newman testified, his prior felony convictions for unauthorized use of a motor vehicle and escape from custody would be admissible for impeachment purposes. Newman chose not to testify. As a result, Newman's version of what happened on March 28 was introduced through the testimony of Officer Smyser, who had taken Newman's statement in the Hennepin County Jail.

According to Newman, Burchill came to his apartment to borrow money because she was behind in her rent. While she was at his apartment, she accompanied Newman to buy cocaine and a couple "tabs of acid." When Newman and Burchill returned to the apartment after buying the drugs, they consumed the cocaine and the acid. Two hours after taking the drugs,

Burchill suddenly turned pale, threw herself on the floor and started convulsing. Newman went to get his keys to open the door so that he could take Burchill outside for some fresh air. When he returned from getting the keys, Burchill was out of control on the floor kicking and screaming. Newman picked her up and carried her to the door. When he got her to the door, she put her hand through the door window. By that time, the noise had brought Shawn Ganley upstairs. Newman told Ganley to take Burchill and try to find out what was wrong with her.

Officer Smyser testified that neither a gun, nor any evidence of a gun, was seized from Newman or his apartment. Newman's girlfriend testified that she spent the weekend following the incident at Newman's apartment, but saw no sign of a gun. A neighbor, awakened by the noise on the night of the incident, testified that she saw Newman shortly after 3:00 a.m. walk down the outer stairway of his apartment and then return, shutting off the light on the stairs. When the neighbor saw Newman, he had a coat on but was not carrying any large objects. At trial, Shawn Ganley testified that when he reached the top of the stairs he saw Newman choking Burchill.

The jury returned a verdict of guilty of attempted criminal sexual conduct in the first degree, but not guilty of either attempted third-degree criminal sexual conduct or second degree assault. Newman was sentenced to the presumptive term of 36 months imprisonment.

## ISSUES

I. Was it within the jury's power of lenity to convict Newman on attempted first degree criminal sexual conduct, but acquit Newman on second degree assault?

II. Did the trial court err in allowing an Uzi submachine gun to be introduced into evidence for illustrative purposes?

III. Did the trial court err in ruling that Newman's prior felony convictions would be admissible for impeachment purposes if he testified?

IV. Was the evidence sufficient to support Newman's conviction for criminal sexual conduct in the first degree?

V. Was Newman denied effective assistance of counsel?

### ANALYSIS

#### I.

The jury found Newman guilty of attempted first degree criminal sexual conduct, but not guilty of either second degree assault or attempted third degree criminal sexual conduct. Newman argues that the jury's not guilty verdict of second degree assault (assault with a dangerous weapon) is inconsistent with the jury's guilty verdict of attempted first degree criminal sexual conduct (sexual penetration with use or threatened use of a dangerous weapon), because both offenses require the use, or threatened use, of a dangerous weapon.

The real issue in this case is not whether the jury verdicts are inconsistent, but the jury's power of lenity. "It is clear that the jury in a criminal case has the power of lenity—that is, the power to bring in a verdict of not guilty despite the law and the facts." *State v. Perkins*, 353 N.W.2d 557, 561 (Minn.1984). The jury could have acquitted Newman on one count solely to limit his punishment. *Aligah v. State*, 394 N.W.2d 201, 204 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Nov. 17, 1986).

■ However, even if the jury verdicts were inconsistent, it would not warrant a dismissal or a new trial. *State v. Czech*, 343 N.W.2d 854, 856 (Minn.1984). The general rule is that a defendant who is found guilty of one count of a multi-count indictment or complaint is not entitled to a new trial or dismissal simply because the jury found him not guilty of the other count, even if the guilty and not guilty verdicts may be said to be logically inconsistent. *State v. Juelfs*, 270 N.W.2d 873, 873–74 (Minn.1978).

■ Newman has no basis to object to the jury's decision to exercise its power of lenity by finding him not guilty of second degree assault, but guilty of attempted first degree criminal sexual conduct.

#### II.

Newman also claims that the trial court erred in allowing an Uzi submachine gun to be introduced into evidence for illustrative purposes. Newman argues that the weapon was not relevant evidence since it was not the same weapon and because it did not accurately portray the weapon that was allegedly used. Alternatively, Newman argues that even if the weapon was relevant, the trial court should have excluded the weapon because its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading to the jury.

■ The admissibility of demonstrative evidence is within the sound discretion of the trial court. *State v. Ward*, 361 N.W.2d 418, 421 (Minn.Ct.App.1985). An evidentiary ruling by the trial court must be affirmed unless a clear abuse of discretion is shown. *State v. Edwards*, 380 N.W.2d 503, 508 (Minn.Ct.App.1986).

In *Ward*, a prosecution for second degree assault, we held that the trial court properly admitted evidence of a pistol similar to one which the victim claimed the defendant pointed at him. 361 N.W.2d at 421. The *Ward* court found that the pistol was only a replica and not the actual weapon used, the gun was admitted only for illustrative purposes, the jury was adequately instructed on the limited purpose of admission and defense counsel had the opportunity to thoroughly cross-examine witnesses about the pistol. *Id.*

■ Only relevant evidence is admissible. Minn.R.Evid. 402. Relevant evidence is evidence having any tendency to make the existence of a fact more probable or less probable than it would be without the evidence. Minn.R.Evid. 401. Evidence, although relevant, may be excluded if its probative value is substantially outweighed

by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Minn.R.Evid. 403.

Burchill testified that Newman pointed an Uzi submachine gun at her head and said, "take off your clothes and get in bed." Because the actual weapon was never recovered, the State sought to introduce into evidence a replica Uzi submachine gun to show the jury what the weapon looked like. At an in-chambers examination, Burchill described the weapon used by Newman and compared it to the State's replica. Burchill described the similarities and differences and concluded, "[I]t's very similar to the gun that was used." The trial court advised the jury that the replica would be admitted only for illustrative purposes; that it was not the same gun that Newman allegedly used; and that it would not go into the jury room with the other exhibits. At the conclusion of Burchill's testimony, the trial court also ruled that the gun must be immediately removed from the jury's view. As a result, Newman has failed to show that he was prejudiced by the court's ruling.

In light of the relevancy standard, Burchill's description of the similarity and differences, the court's limiting instructions and the *Ward* holding, we find that the trial court did not abuse its discretion by allowing the State to introduce into evidence an Uzi submachine gun to be used for illustrative purposes.

### III.

At the omnibus hearing, the trial court ruled that Newman's previous felony convictions for the unauthorized use of a motor vehicle and escape would be admissible for impeachment purposes if he testified. Newman argues that the trial court's ruling unnecessarily chilled his right to testify on his own behalf and, therefore, a new trial must be granted.

Admissibility of prior convictions for impeachment is governed by Minn.R.Evid. 609, which provides, in part:

(a) **General rule.** For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment.

(b) **Time limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction * * *.

It is well established that it is within the trial court's discretion to determine whether the probative value of the conviction outweighs its prejudicial effect. *State v. Amos*, 347 N.W.2d 498, 502 (Minn.1984). The trial court's decision will not be overturned absent a clear abuse of discretion. *Id.*

■ The following five factors are to be considered by the trial court in determining whether to admit evidence of prior convictions for impeachment purposes: (1) the impeachment value of the prior crime, (2) the date of the conviction and defendant's subsequent history, (3) the similarity of the past crime with the charged crime, (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue. *State v. Jones*, 271 N.W.2d 534, 537–38 (Minn.1978).

Recently, in *State v. Ford*, 381 N.W.2d 30 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. March 27, 1986), we upheld admission of a defendant's prior convictions of burglary and aggravated robbery for impeachment in defendant's trial for aggravated robbery. The *Ford* court stated:

After careful analysis of [the five Jones'] factors, we hold that the trial court did not abuse its discretion. The *prior con-*

*victions* for burglary in 1977 and aggravated robbery in 1981 have legitimate impeachment value because they *allow the jury to see "the whole person" and therefore permit the jury to better judge the truth of the defendant's statements.* * * * One factor weighing against the use of prior conviction is the importance of having a defendant testify at trial. A judge may preclude impeachment by even a relevant prior conviction if as a consequence of being impeached the defendant does not testify. * * * There is no way of knowing whether appellant would have testified regardless of the trial court's ruling. We also do not know what appellant would have said had he taken the stand. It does appear that *had appellant testified, his credibility would have been crucial;* the jury would have had to determine whether to believe the appellant or [the victim]. Consequently, even if appellant had testified, the *credibility factor would have been weighed heavily in favor of admitting the prior convictions.* We therefore find no abuse of discretion in the trial court's determination that the probative value of admitting the prior convictions outweighed their prejudicial effect.

*Id.* at 32–33 (citations omitted) (emphasis added).

■ If Newman had testified to establish his defense that he never threatened Burchill or tried to rape her but that she "flipped out on the hallucinogenic drugs," his credibility, as in *Ford,* would have been crucial. "[T]he credibility factor * * * weigh[s] heavily in favor of admitting the prior convictions." *Ford,* 381 N.W.2d at 33. We find that the trial court did not abuse its discretion by ruling that Newman's prior felony convictions would be admissible for impeachment purposes if he testified.

### IV.

Appellate court review of a claim of insufficiency of the evidence is very limited. We must view the evidence most favorable to the State and assume the jury believed the State's witnesses and disbelieved any contradictory evidence. *State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978).

Newman argues that the State has failed to prove beyond a reasonable doubt that he attempted to rape Burchill. Burchill testified that Newman held a gun to her head and told her to take off her clothes. A sexual assault complainant's testimony need not be corroborated. Minn.Stat. § 609.347, subd. 1 (1986). *See also State v. Beard,* 380 N.W.2d 537 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. March 3, 1986) (sexual assault complainant's testimony taken as a whole was consistent and credible).

■ "[I]t is the exclusive function of the jury to weigh the credibility of witnesses." *State v. Blair,* 402 N.W.2d 154, 158 (Minn. Ct.App.1987). The jury is entitled to believe a victim's account of the events. *State v. Trotter,* 354 N.W.2d 539, 541 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Dec. 20, 1984).

■ Our review of the record reveals that the jury could have reasonably believed Burchill's account of the events and found Newman guilty. Therefore, we find that Newman's claim of insufficiency of the evidence is without merit.

### V.

Finally, Newman raises the issue of ineffective assistance of counsel. Prior to trial, Newman discharged his assistant public defender and retained private counsel. Now, after having been convicted and sentenced for attempted first degree criminal sexual conduct, Newman argues he was denied effective assistance of counsel.

■ It is inappropriate for appellant to make these assertions on appeal. *State v. Cermak,* 350 N.W.2d 328, 332 n. 5 (Minn. 1984). A claim of ineffective assistance of counsel should be addressed at post-convic-

tion proceedings. *State v. Wenberg,* 357 N.W.2d 355, 356 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Feb. 6, 1985).

To reverse a conviction based on ineffective assistance of counsel, Newman must show that counsel's performance was deficient as measured by an objective standard of reasonableness under prevailing professional norms and that the deficient performance prejudiced the defense. *Marshall v. State,* 395 N.W.2d 362, 367 (Minn. Ct.App.1986), *pet. for rev. denied* (Minn. Dec. 17, 1986) (*quoting Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

We find that the record does not support Newman's claim of ineffective assistance of counsel.

### DECISION

Affirmed.