**STATE of Minnesota, Respondent,**

v.

**Augusta PIERSON, Appellant.**

**No. C1–84–1473.**

Court of Appeals of Minnesota.

June 4, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief, Appellate Section, J. Michael Richardson, Beverly J. Wolfe, Paul R. Jennings, Anne E. Peek, Asst. County Attys., Minneapolis, for respondent.

William R. Kennedy, Hennepin County Public Defender, David Knutson, Asst. County Public Defender, Minneapolis, for appellant.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

RANDALL, Judge.

Appellant Augusta Pierson appeals from a durational sentencing departure of over three times the presumptive sentence for burglary in the first degree. Appellant urges that the trial judge erred by failing to disqualify himself after demonstrating apparent and actual bias in favor of an upward departure. Appellant also argues that the facts did not justify a triple departure. We affirm the upward departure, but modify it to a double departure only.

## FACTS

At approximately 9:00 p.m. on February 20, 1984, appellant broke into the South Minneapolis home of Helen Swanson and stole approximately $30.00 in cash. Shortly before the break in, appellant rang Mrs. Swanson's doorbell. She walked out onto her front porch and saw appellant on the front steps. Appellant asked her a question regarding an address to which Mrs. Swanson responded that he had the wrong address. Appellant then left.

Shortly thereafter, Mrs. Swanson heard the doorbell ring again. She opened the front door and walked out onto the porch. When she noticed appellant standing on the steps again, Mrs. Swanson, who was 89 years old and partially disabled, immediately turned and attempted to escape from her

porch into her house. Before she could retreat, appellant broke through the locked porch door, entered the porch and overtook her. He then pushed her into the house.

Once in the house, appellant pushed and shoved Mrs. Swanson around and ordered her to give him money. Terrified of appellant's threats, Mrs. Swanson unlocked a drawer and gave him $30.00. Appellant then forced Mrs. Swanson into her kitchen and, tightly clutching her shoulder, demanded more money. From somewhere in Mrs. Swanson's home, appellant picked up a dull-bladed standard table knife and held that in his hand as he pushed Mrs. Swanson and demanded more money.

Unknown to appellant, a neighbor, having seen some of the activity, notified police that Mrs. Swanson's home was apparently being burglarized. The police arrived minutes after the call and apprehended appellant in the kitchen grasping Mrs. Swanson's shoulders with one hand and holding a table knife in the other hand.

Appellant was taken into custody and charged with one count of burglary in the first degree while possessing a dangerous weapon under Minn.Stat. §§ 609.582, subd. 1(b) and 609.11, subd. 4 (1982), and one count of aggravated robbery while possessing a dangerous weapon under Minn.Stat. § 609.245 (1982). The jury found appellant guilty of the burglary charge but not guilty of aggravated robbery. Instead, the jury convicted appellant of the lesser included simple robbery under Minn.Stat. § 609.24 (1982).

The presumptive sentence for the burglary count is 41 (38–44) months executed. The trial court departed upward and imposed a 135 month sentence for the burglary count. On the simple robbery conviction, the court imposed a 27 month executed sentence to be served concurrently, which is not an issue on appeal.

At a pre-trial hearing May 24, 1984, trial counsel for appellant and the State engaged in some informal plea discussions in the court's chambers. The court indicated preliminarily that if the allegations in the complaint against appellant were proven and appellant were convicted, the court would consider a possible upward departure from the sentencing guidelines.

The court prefaced these remarks by stating that the appellant is presumed innocent until proven guilty, and the ultimate sentence would be based on the presentence report and on psychological and chemical evaluations not then available. At this time the appellant moved the court to recuse itself. The court denied the motion.

During the trial but out of the jury's presence, the court questioned the victim about her age specifically to provide a partial factual basis on record for an upward departure. The appellant moved that those questions and responses be stricken from the record. The court denied this motion.

Following the prosecution's failure to give appellant timely notice of its intent to seek an upward departure from the sentencing guidelines, the court continued the sentencing for one week. This was done in response to appellant's motion for more time to adequately prepare for the hearing. The court denied appellant's motions to foreclose the State from arguing for an upward departure.

At the sentencing hearing, the court voiced its displeasure with the ruling of the Supreme Court in *State v. Evans*, 311 N.W.2d 481 (Minn.1981) which reversed this same trial judge. *Evans* held that, absent extreme circumstances, the court's discretion to depart upward should generally be limited to double the presumptive sentence.

Here, as part of its remarks at sentencing, the trial court asked the Minnesota Court of Appeals not to follow *Evans* or, in the alternative, to order a hearing and invite amicus briefs by prosecution and defense sources on the issue of whether the Minnesota Supreme Court can limit sentences to anything less than statutory maximums. Once again appellant moved the court to recuse itself, and once again the court refused. Appellant then moved the court to impose the presumptive sentence,

but the court declined and sentenced him to the terms mentioned above.

## ISSUES

1. Whether certain judicial utterances and conduct before and during trial and at the sentencing hearing, indicating predisposition toward an upward durational departure from the sentencing guidelines, denied appellant his procedural due process right to a fair and impartial sentence?

2. Whether the circumstances surrounding commission of the convicted offenses were so substantial and compelling as to justify an upward departure of greater than three times the guidelines presumptive sentence?

## ANALYSIS

### I.

*Due process*

Appellant claims the court's denial of his various motions to the court to remove itself for implied and actual bias and other conduct denied him his constitutional due process right to an impartial judge at sentencing.

Appellant raised the following issues: 1) the court's remarks made during the informal plea discussions; 2) the court's taking testimony in chambers during the trial specifically to support a possible upward departure; 3) the court's denying appellant's claim that since the State's notice of intent to depart was untimely, the State was forever foreclosed from arguing for an upward departure; 4) the court's refusal to recuse itself; 5) the court's remarks violating his constitutional rights to due process at sentencing.

■ 1. Regarding the court's comments during the informal plea discussions, we do not find it improper for the court to indicate in hypothetical fashion that, if the allegation in the complaint results in a conviction, an upward departure might be appropriate. The court specifically indicated that it had not made up its mind, was aware of appellant's presumption of inno-

cence prior to conviction, and that even following a conviction, it would want to wait for the standard reports accompanying a presentence investigation before making up its mind.

2. The second claim, the court's stopping during the trial to take in chambers testimony from the victim about her age for the specific reason of making a record for a possible upward departure, is troublesome. The court explained its actions by stating that it felt the prosecution had failed to lay a proper record for an upward durational departure from the sentencing guidelines by failing to ask Mrs. Swanson her age. Appellant argues that conduct showed bias and a predisposition to depart.

Respondent contends that during trial judges have the discretion to ask questions of witnesses for the limited purpose of insuring clarity in testimony. *See* Minn.R. Evid. 614.

■ However, that rule and supporting cases hold that the court's discretion to interrogate witnesses should be used sparingly and with great care so as not to influence a jury. That is not the point appellant raises. Here, questioning was not done in front of the jury for the purpose of clarifying testimony. The record is clear that the court brought Mrs. Swanson into chambers to elicit her age, as the State had not, for the sole purpose of establishing the grounds for a possible upward departure based on the vulnerability of the victim partially based on age.

The circumstance surrounding this interchange, when coupled with the court's comments during sentencing on its view of the Minnesota Supreme Court case of *State v. Evans,* set out later in this opinion, lend credence to appellant's argument. Since age was not an essential element of the crime, the State had no need to elicit it. If needed following a conviction to support a claim of vulnerability due to age, the information could easily have been obtained from several sources during presentence investigation, including the police reports

about the incident or a simple phone call to Mrs. Swanson or a relative.

We note that at the conclusion of all testimony by both sides in a criminal case, a trial judge should commonly anticipate motions by defense counsel for dismissal of some or all counts on the grounds that the State has failed to show a prima facie case. Also commonly anticipated would be motions by the defense for certain instructions to the jury. Defense counsel could legitimately be concerned about those motions receiving a fair and impartial hearing if, during the trial while the defendant is cloaked with a presumption of innocence, the court on its own motion begins to build a record for a possible upward departure. However, the question was asked out of the hearing of the jury so the verdict was not tainted. Since the record of appellant's conduct does justify an upward departure, we find no clear error on this issue.

▆▆ 3. Appellant argues that since the State's notice of intention to depart was untimely, the State was permanently foreclosed from arguing for an upward departure. Appellant argues the court's granting of a one week continuance to him to prepare for sentencing and then allowing the State to argue for upward departure was error and further evidence of the court's bias.

▆▆ We find no prejudice in the court allowing the State to argue for an upward departure at sentencing. Appellant, at his own request, was given additional time to prepare for sentencing after learning of the State's intentions. Minnesota Rules of Criminal Procedure 27.03 allows the court either on its own motion or that of the State to consider departure. *See State v. Elkins*, 346 N.W.2d 116 (Minn.1984). Minnesota Rules of Criminal Procedure 27.03, subd. 1(D) provide for sentencing hearings within a reasonable time, and the court has the authority to grant continuances to allow either side to prepare. Nowhere in the Rules of Criminal Procedure or case law are the directory time limits set out in Minn.R.Crim.P. 27.03, subd. 1(D), (E) held

to be mandatory and inflexible. We find no error here.

4. The next issue is the court's refusal to recuse itself after appellant's several motions, some made before and some after trial. Appellant cites several cases for the general proposition that litigants are entitled to a fair and impartial trier of fact and a neutral judge. *See State on behalf of Hastings v. Denny*, 296 N.W.2d 378, 379 (Minn.1980), *citing Hansen v. St. Paul Ry.*, 231 Minn. 354, 361, 43 N.W.2d 260, 265 (1950); *Reserve Mining Co. v. Lord*, 529 F.2d 181 (8th Cir.1976); *State v. Ketterer*, 244 Minn. 127, 69 N.W.2d 115 (1955).

▆▆ However, appellant did not use his one permissible affidavit of removal without cause prior to trial. Minn.R.Civ.P. 63.03. Once the trial commenced, appellant could not, as a matter of law, demand a new judge for his case. Granting or denying appellant's motions to the court to remove itself for implied or actual bias rested within the discretion of the trial court. *See Rossman v. Moffett*, 75 Minn. 289, 77 N.W. 960 (1899). We find no error in the trial court denying those several motions.

5. The last issue under due process is appellant's claim that the trial court's remarks at sentencing reflect an over-all bias toward appellant and add substance to issues 1–4. Although the court's comments are lengthy, they are set out verbatim in fairness to both sides and because the trial court addressed questions to this court:

> We have just set forth the grounds for departure upwards. We would now like to address ourselves to why we feel that this sentence should stand though it is more than twice what the guidelines calls for under the so-called *Evans* rule. Mr. Pierson, you have a right to be sentenced independent of other issues and this Court has given great weight and care and concern to what is a sentence that would be fair to you and to your loved ones and also the victim and to the community. I've done the best I can to exercise my duties and responsibilities under the constitution and I feel an obligation to go forward at this time and

make the following comment to the Intermediate Court of Appeals if indeed they will be the appellate court that will first hear this matter.

This Court was the trial judge in the *Evans* case. This Court imposed a sentence must larger, much more than twice as large as that set forth in the Minnesota Sentencing Guidelines in that case. The Minnesota Supreme Court without oral argument or without prior notice to anyone adopted the position that a trial judge can only depart in sentencing up to twice what the Sentencing Guidelines call for unless there are unusual factors. They said in *Evans* which also involved a victim in his 80's who was violated in his home that there were not acts showing any permanent harm. My thoughts to the Intermediate Court of Appeals are as follows. First, I would ask them to adopt a position opposed to the *Evans* case and in effect consistent with their constitutional authority, to refuse to adopt the limitation set forth by the Minnesota Supreme Court in *State versus Evans.* Failing in that I would ask the Intermediate Court of Appeals to order a hearing and ask for amicus brief by the appropriate prosecutorial and defense sources on the issue of whether or not it is appropriate for the Supreme Court to limit the right of the trial judge to depart to any limitation less than that set forth by the legislature. I note that there was no oral argument of any kind and no briefing done in the *Evans* case on these issues.

This Court which has the highest possible respect both for the Minnesota Supreme Court as an institution and for individual members, feels that holding as they did in the Evans case the Minnesota Supreme Court expressed a strong commitment toward the Sentencing Guidelines at the expense of what this Court believes to be their proper role vis-a-vis the legislature. We suggest that to limit the right of a trial judge to depart upwards in an amount more than twice that of the Sentencing Guidelines is a serious limitation on a properly legislative role.

We agree completely with Mr. O'Brien when he says this is a matter we should not limit the legislature on and the sentencing in this case is the proper province of the legislature. The legislature of this state on behalf of all the people of this state have said that a burglary such as one that we're concerned with now has a maximum penalty of 20 years. If this Court has erred in any way in pronouncing sentence, we feel it is in having been too lenient and the Court would have imposed the statutory maximum of 20 years in this case.

In light of the guidelines and prevailing case law we have limited this sentence to which if the defendant meets all good time, will result in a sentence of seven and one-half years. We are not unmindful that is a severe sentence and lengthy period of incarceration but in fairness, that is only slightly more than one-third of the maximum allowed by the legislature although three times as great as the sentence we feel is mandated by the Guidelines.

Finally, we would ask that the Intermediate Court of Appeals ask for amicus brief on this and if they are not reconsidering the *Evans* case, to take judicial notice that when an 89-year-old person is violated in their home and sustains the circumstances that this record makes clear were sustained by the victim in this case, then we ask the Intermediate Court of Appeals to take judicial notice that permanent harm does exist and that for all of the remaining days of the life of the victim she will have the residuals of terror and concern and I think it would be unduly callous to obviate that fact. My obligations to the defendant and to his family who came here today are very real and I tried to exercise them. My obligation to the victim in this incident and all other victims in this is to do what I've done.

The quoted remarks are taken by this court to be observations the trial court felt appropriate to put on the record. We address each briefly.

As to the question of taking judicial notice that an 89 year old person *always* suffers permanent harm when assaulted in his or her own home, we decline to do so. Judicial notice of adjudicative facts is normally limited to facts of common knowledge not in dispute, and those for which neither expertise nor foundation is needed. Minn.R.Evid. 201.

Criminal cases are not normally the appropriate setting for judicial notice, particularly of disputed facts. *See* Minn.R. Evid. 201(g). In this case there was a factual dispute. Appellant argues there was no permanent harm to the victim and supports that argument by the direct testimony of the victim herself that she was neither injured nor harmed.

While unable to take judicial notice of permanent harm to the elderly victim, we acknowledge the vulnerability of the elderly in general. It is conceivable, depending on the facts of a particular case, that a court might take judicial notice that a victim suffered "an" injury or "some" harm. Here, with the claim of permanent harm being based on the subjective element of emotional distress, totally unsupported by medical testimony, and in light of the express disclaimer of the victim herself, we do not find judicial notice appropriate.

As to the *Evans* case, we do not adopt a position opposed to it; in fact we find it controlling on the issue of substantial and compelling circumstances.

Finally, we have neither the prerogative nor the wish to order a hearing and ask for amicus briefs on the issue of whether or not the Minnesota Supreme Court understands criminal law.

## II.

*Substantial and compelling circumstances*

Appellant claims that even if no denial of due process is found, the circumstances surrounding the burglary and robbery do not justify an upward departure of approximately 3.3 times the presumptive sentence. We agree. Departure must be based solely on the presence of appropriate and supported mitigating or aggravating factors rising to the level of "substantial or compelling circumstances." *State v. Bellanger*, 304 N.W.2d 282 (Minn.1981). General disagreement with the sentencing guidelines or their underlying legislative policy does *not* justify departure. *Id.* at 283. Here the trial court's remarks at sentencing support appellant's claim that the extreme upward departure was partially triggered by the trial court's general disagreement with the sentencing guidelines, and that is impermissible.

As express reasons for imposing the triple departure on appellant, the trial court adopted "in total the numerous grounds set forth in the Notice of Motion, Motion of the State and accompanying memorandum as grounds for departure upwards in this case * * * ", including:

(A) the extreme age, mental and physical infirmity, and vulnerability of the victim;

(B) infliction by the [appellant] of gratuitous violence upon the victim;

(C) the terrorization of the victim in the security and privacy of her own home;

(D) the infliction of real and permanent injury to the victim in the case; and

(E) the occurrence of injury in the current case coupled with a prior felony conviction (Criminal Sexual Conduct in the First Degree) for an offense in which the victim was injured.

The facts in this case are far less aggravated than those in *State v. Evans*, 311 N.W.2d 481. In *Evans* the defendant was sentenced on two different charges of aggravated robbery involving different victims and different instances. In one, the defendant and an accomplice forced their way in to the home of an elderly married couple, hit the husband while gaining entry to the house, and the accomplice held a knife against the man's throat and threatened to kill the couple if they did not get money.

The other aggravated robbery was similar. Defendant and an accomplice assaulted the husband, hit him with a shovel handle, kicked him and threatened him with a knife. Another accomplice forced the wife from the house out to the garage, took personal jewelry from her and pushed her to the floor. The husband sustained three cracked ribs, a black eye and bruises and contusions while the wife sustained bruises on the wrists, arms and legs. Medical attention was needed. In *Evans* the Supreme Court stated:

> We now have some experience in reviewing sentences imposed by judges in departing from the presumptive guidelines' sentence. After careful consideration of the problem in light of that experience, we conclude that *generally* in a case in which an upward departure in sentence length is justified, the upper limit will be double the presumptive sentence length. This is only an upper limit and we do not intend to suggest that trial courts should automatically double the presumptive length in all cases in which upward departure is justified nor do we suggest that we will automatically approve all departures of this magnitude. On the other hand, we cannot state that this is an absolute upper limit on the scope of departure because there may well be rare cases in which the facts are so unusually compelling that an even greater degree of departure will be justified.

> In reducing defendant's sentence to 96 months, we imply no criticism of the trial court. The general standard which we apply today is a standard which we adopt today.

*Id.* at 483.

We contrast *Evans* with the facts in this case. Mrs. Swanson was rudely pushed through rooms in her own home. She was undeniably terrified. At one point appellant held a table knife in his hand while he asked for more money. Although we easily accept the fact that she was extremely terrified, and the fact that there was gratuitous cruelty—appellant neither had to grab her shoulder nor push her around nor wave a knife at her to obtain the money

she willingly gave—it is undisputed that there were no physical injuries and no medical testimony indicating any aftereffects. The victim acknowledged she was scared and now is frightened to live alone, but testified she was neither injured nor harmed.

■ Appellant argues that because the holding of the knife was an essential element of the more serious charge, burglary in the first degree while possessing a dangerous weapon, the knife alone cannot be used to depart on the burglary count. We agree. *State v. Rogers*, 347 N.W.2d 551 (Minn.Ct.App.1984).

On the second count, the lesser offense of simple robbery, appellant points out that Minnesota Sentencing Guidelines II.D.103 specifically prohibits departure based on possession of a dangerous weapon:

> It follows from the Commission's use of the conviction offense to determine offense severity that departures from the guidelines should not be permitted for elements of alleged offender behavior not within the definition of the offense of conviction. Thus, if an offender is convicted of simple robbery, a departure from the guidelines to increase the severity of the sentence should not be permitted because the offender possessed a firearm or used another dangerous weapon.

Even, arguendo, if the waving of the table knife is claimed to be gratuitous cruelty, an acceptable fact for upward departure, it falls short of justifying a triple departure.

We note appellant's argument that he is already being punished severely for the use of the table knife during the burglary. He is correct. The use of a dangerous weapon in this residential burglary raised the presumptive sentence from 30 months and presumed stay of execution (Level VI with a criminal history score of 2) to a presumptive executed sentence of 41 months (Level VII with a criminal history score of 2). Minn.Stat. § 609.582, subd. 1(a)(b) (1982).

■ Appellant argues that invasion of the privacy of the home has been limited by this court to sex and violent assault cases. In *State v. Saharath*, 355 N.W.2d 312, 314 (Minn.Ct.App.1984) this court did comment that this factor is typically associated with "sexual offenses." However, neither our court nor the Minnesota Supreme Court has limited invasion of the zone of privacy to sexual or violent assault cases. We hold a trial court may properly consider invasion of privacy in burglary cases providing it does not compound sentences when the invasion is an essential element of the charge itself, thus already accounted for in sentencing severity tables.

■ Here the trial court was entitled to consider zone of privacy as an aggravating factor since Minn.Stat. § 609.582, subd. 1(b) does not require as an essential element that the burglar enter a dwelling, only a building. Generally unauthorized entry into residential dwellings are viewed more seriously than entry into commercial or industrial buildings.

Appellant argues that he was acquitted of aggravated robbery while possessing a dangerous weapon and thus the trial court may not impose a sentence which reflects the court's belief that defendant was guilty of a crime more severe than that found by the jury. *State v. Givens*, 332 N.W.2d 187 (Minn.1983). We agree.

Appellant claims that his case was used as a sounding board by the trial court to voice displeasure in being overruled in *State v. Evans*, wherein the court sentenced Evans to a triple departure which was subsequently reduced by the Supreme Court to a double departure. Although the claim has merit, we do not modify the sentence on the constitutional due process argument.

■ We do find the facts and circumstances not so substantial and compelling to justify a triple departure. We find *Evans* controlling. We acknowledge that one of the specific purposes of the sentencing guidelines was to insure that upon conviction for a crime a set sentence, after "good

time," would be served. The trial court's discretion to depart cannot be unlimited. *Evans* at 483. Allowing unlimited deviation up to the statutory maximum, as advocated by the trial court, would be in essence a return to the old system and would effectively destroy the sentencing guidelines.

We affirm the upward departure but impose a sentence of 88 months which is double the maximum presumptive sentence of 44 months for burglary in the first degree and leave intact the 27 months sentence for the simple robbery to run concurrently.

## DECISION

We affirm the upward departure from the 44 month maximum presumptive sentence for burglary in the first degree, but modify it downward from 135 months to 88 months.

Affirmed as modified.