**STATE of Minnesota, Respondent,**

v.

**Gary Lee BROWN, Appellant.**

**No. CX–89–1328.**

Court of Appeals of Minnesota.

May 8, 1990.

Review Denied July 6, 1990.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

John M. Stuart, State Public Defender, Marie L. Wolf, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and SCHUMACHER, and LESLIE,* JJ.

## OPINION

HUSPENI, Judge.

Appellant alleges that his conviction for attempted first degree murder was based on a denial of his right to confrontation, erroneous evidentiary rulings, confusing jury instructions and insufficient evidence. Appellant also alleges that the jury verdict is inconsistent and that his upward sentencing departure was an abuse of the trial court's discretion. We affirm.

## FACTS

For approximately a year prior to February 1988, appellant Gary Lee Brown and his family were harassed by persons suspected to be gang members. Because of the harassment, appellant, who indicated that he had formerly been a member of a different gang but was not presently active therein, moved his family from their subsidized apartment to a more expensive and unsubsidized duplex in another part of town. The harassment subsided for a period after the move, but eventually resumed. Harassment included but was not limited to being watched, verbal threats, physical assaults, shootings at and into appellant's residence and the stopping and breaking of windows of the car in which members of appellant's family were traveling. After the incident involving the car, appellant purchased a loaded gun allegedly to protect himself and his family.

On February 23, 1988, appellant, Patrick Timberlake and one "Rollo" entered a Min-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

neapolis community center believed to be a "hangout" for the gang that had been harassing him. Appellant testified that he did not know that the victim, Farley Cotton, would be there but, upon entering, he saw Cotton. Cotton was an employee of the center. He was also allegedly a ranking member of the gang which was harassing appellant. Appellant had his gun with him and testified that he cocked it before entering the center. Appellant also testified that he wanted it known that in the future he would use the gun to protect himself and his family. Appellant further testified that after an initial unsuccessful attempt to get Cotton's promise to use his influence to end the harassment, he followed Cotton to show him the gun; as he drew the gun, he was rushed by Lenny Smith. Appellant stated that he did not intend to pull the trigger but that, as a result of Smith rushing appellant, the gun went off, hitting Cotton in the head.

Cotton testified that while he had previously been affiliated with gangs, he was not so affiliated at the time of the shooting. Cotton testified that after a first conversation with appellant, appellant and his friends went into the bathroom. While appellant denied ever entering a bathroom, Cotton claimed that appellant and those with him did enter the bathroom, return and ask him about a pool game, and then re-entered the bathroom. Cotton sat by a window when appellant and his friends returned from the second visit to the bathroom. While Cotton does not explicitly remember being shot, he does remember a ringing in his ears followed by seeing appellant with the gun.

At trial Lenny Smith denied "rushing" appellant. Additionally, other witnesses testified that any contact between appellant and Smith occurred after the gun discharged, and that when the gun went off, appellant had his arm fully extended and with the gun pointing at Cotton's head. Finally, witnesses testified that just prior to the gun going off, they heard one of the men with appellant tell appellant "do what you have to do" or "do what you came to do." Appellant testified that he remembered no such statement. Neither Rollo nor Timberlake testified at trial.

After being charged but before rendering their verdict, the jury asked the judge two questions about premeditation.

## ISSUES

1. Did the trial court's admission of out-of-court statements deprive appellant of his right to confront witnesses?

2. Did the trial court's evidentiary rulings deprive appellant of his right to present a defense?

3. Is appellant entitled to a new trial because of an inconsistent jury verdict?

4. Is appellant entitled to a new trial because of confusing jury instructions?

5. Is the evidence sufficient to support appellant's conviction?

6. Did the trial court fail to consider mitigating circumstances in granting the state's motion for an upward sentencing departure?

## ANALYSIS

### I.

■ While neither Rollo nor Timberlake was called to testify, the trial court admitted their statements on several grounds. The statement "do what you came to do" is not assertive and cannot be determined to be true or false. Therefore, it is not excludable as hearsay. Under the rules:

> "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

Minn.R.Evid. 801(c).

■ Further, under Minn.R.Evid. 801(d)(2)(E) "a statement made by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. Appellant, citing *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980), maintains that admission deprived him of his right to confrontation because there was no conspiracy and because there was no proof of the declarant's unavailability. In *United States v. Inadi*, 475 U.S. 387, 395, 106 S.Ct. 1121,

1126, 89 L.Ed.2d 390 (1986), the Supreme Court determined that "[the *Roberts* unavailability] principles do not apply to co-conspirator statements."

 Appellant argues that the trial court's consideration of the statement "do what you came to do" to determine whether there was in fact a conspiracy was inappropriate because under *State v. Jenkins*, 411 N.W.2d 504, 509 (Minn.App.1987), "independent prima facie proof [of the conspiracy]" exclusive of the statement must be presented. We disagree. "A court, in making a preliminary factual determination under Rule 801(d)(2)(E), *may examine the hearsay statements sought to be admitted * * *.*"[1] *Bourjaily v. United States*, 483 U.S. 171, 181, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987) (citation omitted) (emphasis added). Thus, the trial court, in determining whether a conspiracy existed, did not err in considering the statement, and the question becomes whether the trial court's determination that a conspiracy did exist was clearly erroneous. *See Bourjaily*, 483 U.S. at 181, 107 S.Ct. at 2782.

In Minnesota,

> The elements of the crime of conspiracy are: (1) an agreement with another to commit a crime, and (2) an overt act in furtherance of the conspiracy.

*State v. Olkon*, 299 N.W.2d 89, 104 (Minn. 1980), *cert. denied* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981). Additionally, "the requisite mental state for conspiracy is intent, not mere knowledge," *United States v. Mankani*, 738 F.2d 538, 547 n. 1 (2nd Cir.1984). Finally, "the plan to commit first degree murder can be formulated virtually instantaneously." *State v. Alton*, 432 N.W.2d 754, 756 (Minn.1988). Here there was testimony that appellant and those accompanying him entered the bathroom twice before shooting Cotton. Additionally, the statement "do what you came to do" indicates that at least one of the individuals accompanying appellant knew what appellant intended to do. These circumstances, plus the facts that appellant

cocked his gun before entering the community center and that he was accompanied not only to the community center but also up to Cotton by individuals who knew what he was going to do, support a finding by a preponderance of the evidence that a conspiracy existed.

## II.

Appellant next alleges that the trial court prevented presentation of a defense when it refused to admit evidence of appellant's increased rent upon moving and in refusing to allow questioning regarding whether certain witnesses were gang members.

Generally, "[r]ulings on evidentiary matters rest within the sound discretion of the trial court." *Caldwell v. State*, 347 N.W.2d 824, 826 (Minn.App.1984). Additionally, even if the court errs in an evidentiary ruling, "[a] reversal is warranted only when the error substantially influences the jury to convict." *State v. Loebach*, 310 N.W.2d 58, 64 (Minn.1981).

 The critical questions at trial were whether, at the time of the shooting, appellant had the requisite intent and premeditation to support a determination that he attempted first degree murder. The relevance of appellant's rent to these questions is limited at best. *See* Minn.R.Evid. 401.

 We believe, however, that the possible gang membership of various witnesses would go to their bias. Generally, witness bias is a proper subject for testimony. *See State v. Larson*, 389 N.W.2d 872, 874–75 (Minn.1986). Therefore, we believe that the trial court's preclusion of testimony on this issue was error. In light of the strength of the evidence in this case, however, we find the exclusion of that evidence harmless. Here, the testimony of the alleged gang witnesses was consistent with that of persons not alleged to be gang witnesses. Indeed, a chaplain present at the time of the shooting specifically testified that he heard someone say "do what

---

1. *Jenkins* does not address *Bourjaily* which was released at approximately the same time. *Bour-jaily* controls our determination here.

you came to do" just before the shooting. The chaplain was not alleged to be a gang member. Further, if, as appellant argues, testimony would show that certain witnesses and Cotton were members of the gang that had been harassing appellant and his family, such evidence may have actually strengthened the state's revenge theory for premeditation.

■ Finally, we find no reversible error in the trial court's receipt of evidence of appellant's alleged gang affiliation(s). While we recognize that the trial court ruled differently on the admissibility of appellant's alleged gang affiliation from its ruling regarding other witnesses, we conclude that the jury was not substantially influenced to convict as a result of these disparate evidentiary rulings. The critical questions at trial were appellant's intent and premeditation rather than the credibility of other witnesses.

### III.

■ Appellant argues that he is entitled to a new trial because conviction of attempted first degree murder was legally inconsistent with acquittal of attempted second degree murder. *See State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). We cannot agree. This court has stated:

It is clear that the jury in a criminal case has the power of lenity—that is, the power to bring in a verdict of not guilty despite the law and the facts. *The jury [can acquit a defendant] on one count [of a multicount indictment] solely to limit his punishment.*

However, even if the jury verdicts were inconsistent, it would not warrant a dismissal or a new trial. The general rule is that a defendant who is found guilty of one count of a multi-count indictment or complaint is not entitled to a new trial or dismissal simply because the jury found him not guilty of the other count, even if the guilty and not guilty verdicts may be said to be *logically* inconsistent.

*State v. Newman*, 408 N.W.2d 894, 898 (Minn.App.1987), *pet. for rev. denied* (Minn. Aug. 19, 1987) (citations omitted) (emphasis added).

First degree murder requires both intent and premeditation. *See* Minn.Stat. § 609.185(1). Second degree murder requires intent but does not require premeditation. *See* Minn.Stat. § 609.19(1). A narrow reading of these definitions by the jury could produce the logical conclusion that the presence of premeditation forecloses a jury from a guilty verdict on a charge of second degree murder. Under these circumstances the jury's determination that appellant premeditated his acts would have resulted in its guilty verdict on the attempted first degree murder charge and its not guilty verdict on the attempted second degree murder charge.

### IV.

■ Appellant did not challenge any jury instructions at trial, but argues for the first time on appeal that instructions regarding premeditation and intent were inconsistent with a CRIM JIG. instruction. We cannot address this issue unless there is plain error affecting "fundamental laws." *State v. Malaski*, 330 N.W.2d 447, 451 (Minn.1983). We find no fundamental error.

Appellant maintains that the trial court's instruction might have allowed the inference that premeditation of any act rather than just Cotton's shooting was sufficient to support a guilty verdict.[2] Generally, "when reviewing jury instructions, a reviewing court must "assume that the jurors were intelligent and practical people." *State v. Weaver*, 386 N.W.2d 413, 418 (Minn.App.1986), *pet. for rev. denied* (Minn. June 19, 1986) (citation omitted). Additionally,

[when] construing a charge to a jury, the jury instructions must be reviewed as a whole. The jury instructions must be viewed in their entirety to determine

---

**2.** The trial court's premeditation instruction is identical to the third element of CRIM JIG. 11.02 which also addresses premeditation and which was approved in *State v. Martin*, 261 N.W.2d 341, 345 (Minn.1977). Further, that instruction is consistent with the statutory definition of "premeditation." *See* Minn.Stat. § 609.18 (1988).

whether they fairly and adequately explained the law of the case.

*State v. Flores*, 418 N.W.2d 150, 155 (Minn. 1988) (citations omitted).

The jury instructions here specifically required that appellant have acted both with the intent to kill Cotton and with premeditation. Regarding premeditation, the instructions were explicit that the premeditated decision to kill may be reached in a short period of time. These jury instructions are clear enough and strong enough to require an inference from "intelligent and practical people" that a premeditated intent to kill is necessary in order to convict for first degree murder.

Finally, we are not persuaded that the jury's inquiries about premeditation indicate confusion regarding that factor.[3] Neither question asked by the jury indicates any confusion about what constituted "the act" for which premeditation was required.

### V.

■ Appellant's challenges to the sufficiency of the evidence of his intent and premeditation must fail. Testimony at trial which the jury could have believed was ample to support both intent and premeditation. The gun was cocked upon entering the center. Appellant's arm was described as outstretched. The statement "do what you came to do" could permit the jury to conclude beyond a reasonable doubt that the shooting was premeditated.[4]

Appellant's challenges to the credibility of certain witnesses must also fail. He suggested that the clothing they wore to trial indicated that they were members of Cotton's gang. We are not convinced of a relationship between witnesses' attire and appellant's state of mind. Similarly, appellant's attempts to impeach the testimony of the identified community center employees by suggesting that they were interested in

the trial's outcome is unpersuasive. "[W]eighing the credibility of witnesses is the exclusive function of the jury." *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980).

Finally, appellant argues that if he really premeditated the shooting, his plan to do so and escape would have been more elaborate. To reverse on this basis would be speculative and would require us to review the evidence in a way other than in the light most favorable to the verdict. We cannot. *See State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978).

### VI.

"The trial court has broad discretion [in sentencing] and [an appellate court] generally will not interfere with the exercise of that discretion." *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981).

Appellant's presumptive sentence for attempted first degree murder was 130 months. The statutory maximum sentence for that crime is 240 months. *See* Minn. Stat. § 609.17, subd. 4(1) (1988). The trial court imposed a sentence of 240 months and adopted the rationale of the state's departure memorandum to support its sentencing decision. Appellant challenges each basis for departure.

■ Appellant correctly points out that possession of a firearm as an aggravating factor applies only to "controlled substance offenses." *See* Minnesota Sentencing Guidelines II.D.2.b.(5)(d). Further, the trial court's determination that this offense was committed in furtherance of gang activity has only questionable direct support in the record. Nor do we find support for the court's decision to depart upward because this offense took place in a community center.

---

3. The jury's first request sought a definition for the "short period of time" required to form premeditation. Second, it questioned whether all of the verbs ("considered, planned, prepared for or determined to commit") applied to the act in question.

4. *Bourjaily* requires only a preponderance of evidence to show a conspiracy. A defendant's guilt must be proven beyond a reasonable doubt. Therefore, admission of the statement "do what you came to do" alone is not necessarily sufficient to support both a determination that a conspiracy exists and a determination that premeditation was present.

■ However, appellant's reliance on *State v. Barnes*, 313 N.W.2d 1 (Minn.1981) and *State v. Pierson*, 368 N.W.2d 427 (Minn.App.1985) to challenge the trial court's use of serious permanent bodily harm as a basis for departure is misplaced. The offenses of conviction in *Barnes* and *Pierson* had as an element great bodily harm. Appellant was sentenced on attempted first degree murder. Great bodily harm is not an element of that offense. *See* Minn.Stat. §§ 609.17, 609.185. Therefore, *Barnes* and *Pierson* are distinguishable. In addition, the supreme court has affirmed an upward durational departure even in a case which had as an element of the offense infliction of injury. *See State v. Van Gorden*, 326 N.W.2d 633, 634 (Minn.1982) ("[T]he injury inflicted nonetheless can be considered as an aggravating factor in this case because of its serious and permanent nature.")

Cotton, as a result of appellant's act, lost hearing in the right ear and suffers partial facial paralysis. These are serious and permanent injuries of the nature found to support departure in *Van Gorden*. There is support for departure in this case also and we find no abuse of the trial court's discretion.

Finally, appellant relies on *State v. Hennum*, 441 N.W.2d 793, 800–01 (Minn.1989), to support the argument that his sentence reflects improper emphasis by the trial court on only the aggravating factors to the exclusion of mitigating ones. We find appellant's reliance on *Hennum* to be misplaced. The *Hennum* court noted that a majority of states had accepted the "battered women's syndrome," recognized the significant body of scientific evidence supporting the syndrome's validity, and ruled that evidence regarding the "battered women's syndrome" was admissible. Additionally, there was a sentencing recommendation for downward departure in *Hennum*. The *Hennum* court recognized that case to be one of the rare cases justifying an appellate court's alteration of a trial court's sentence. There is no allegation here that appellant suffered from a recognized syndrome nor does his record contain a recommendation for a reduced sentence. *Hennum* is distinguishable.

We have also examined the arguments raised in appellant's pro se supplemental brief and found each of them to be without merit.

## DECISION

The trial court's evidentiary rulings deprived appellant neither of his ability to confront a witness nor of his ability to put on a defense. Additionally, we cannot say that the jury's instructions or verdict were sufficiently confusing or contradictory, respectively, to require a new trial or that the evidence was insufficient to establish appellant's guilt. Finally, we cannot find the trial court's sentencing departure to be an abuse of discretion.

Affirmed.

LESLIE, J., concurs in part, dissents in part.

LESLIE, Judge (concurring in part, dissenting in part).

I respectfully dissent and would remand the case for resentencing. Recognizing that "[b]ecause of human involvement, no criminal proceeding disposed of by a trial is likely to be completely free of defects, irregularities or errors," *State v. Mastrian*, 285 Minn. 51, 75, 171 N.W.2d 695, 710 (1969), *cert. denied* 397 U.S. 1049, 90 S.Ct. 1381, 25 L.Ed.2d 662 (1970), the supreme court has stated "a defendant is entitled to a fair trial but not a perfect one." *Id.*, (quoting *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968)). Here, while I do not agree with a significant number of the trial court's rulings, or with the majority's official and public sanctioning of the same, I believe that appellant received a fair trial and that the evidence of appellant's guilt is so overwhelming that I cannot help but conclude that his conviction was appropriate. I would, however, remand the case for resentencing.

Before specifically addressing the sentencing issue before the court, I am forced to observe, in general, the significant num-

ber of departures from the sentencing guidelines. "The purpose of the sentencing guidelines is to establish *rational and consistent* sentencing standards * * *." Minnesota Sentencing Guidelines I (emphasis added). As the comments to the guidelines observe,

> [these purposes] cannot be achieved unless the presumptive sentences are applied with a high degree of regularity. Sentencing disparity cannot be reduced if judges depart from the guidelines frequently. Certainty in sentencing cannot be attained if departure rates are high.

Minnesota Sentencing Guidelines Comment II.D.03. With this in mind, I proceed to examine appellant's sentence.

In this case, the trial court allowed an upward durational departure based entirely upon the state's motion therefor. Without even verifying the validity of the state's proffered reasons for the requested departure, the trial court simply stated "[t]he basis for the departure is by adoption and reference * * * the memorandum submitted to the court by the state." This summary adoption procedure is, in my opinion, highly inappropriate.

By statute, when a nonguideline sentence is imposed

> the district court shall make written findings of fact as to the reasons for departure from the sentencing guidelines in each case in which the court imposes or stays a sentence that deviates from the sentencing guidelines applicable to the case.

Minn.Stat. § 244.10, subd. 2 (1988) (emphasis added). " 'Shall' is *mandatory*," Minn. Stat. § 645.44, subd. 16 (1988) (emphasis added); *compare* Minn.Stat. § 645.44, subd. 15 (1988) (" 'May' is permissive"). *See also* Minnesota Sentencing Guidelines II.C. ("*any* prison sentence duration pronounced by the sentencing judge which is outside the range of the presumptive duration is a departure from the guidelines, * * * and *requires* written reasons from the judge * * * ") (emphasis added); II.D. ("When departing from the presumptive sentence, *a judge must provide written reasons* which specify the substantial and

compelling nature of the circumstances, and which demonstrate why the sentence selected in the departure is more appropriate, reasonable, or equitable than the presumptive sentence") (emphasis added). I believe that the legislature has made clear its intent that the absolute prerequisite of a nonguideline sentence is a set of written findings justifying that departure. Further, when the law's application is without question, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (1988). Because a trial court's adoption of the state's reasons for the departure does not constitute the statutorily required findings, I would remand for resentencing.

Even assuming that the adoption of an argument for a sentencing departure could be seen as the impartial judicial findings necessary to support that departure, that would not allow affirmance here. As noted by the majority, over half of the reasons the trial court allegedly used to "justify" its departure did not apply to this case. Further, to the extent that the trial court may have partially based its departure on the fact that the shooting took place at a community center, I note that factor is not on the guidelines' admittedly "nonexclusive" list of aggravating factors, *see* Minnesota Sentencing Guidelines II.D.2.b. Like the majority, however, I am wholly unconvinced that the geographical locale of an intentional crime, which is arguably purely accidental, should be so used. Lastly, the majority's reliance on *State v. Van Gorden,* 326 N.W.2d 633, 634–35 (Minn. 1982) is not persuasive to me. In that case, four separate aggravating factors were present. Further, although the supreme court "attach[ed] particular significance to the fact that permanent injury was inflicted" they "bas[ed] [their] conclusion on the *totality* of the circumstances." *Van Gorden,* 326 N.W.2d at 635. Here, the presence of other aggravating circumstances is questionable and consideration of the "totality of the circumstances" would include recognition of the fact that Cotton, the victim, may have been involved in the substantial harassment of appellant and his family, including, as the majority points

out, being watched, verbal threats, physical assaults, shootings at and into appellant's residence and the stopping and breaking of windows of the car in which members of appellant's family were traveling. As such, the victim could be seen as the aggressor in this incident and thus a mitigating factor would be present. *See* Minnesota Sentencing Guidelines II.D.2.a(1). I would remand for resentencing pursuant to the guidelines.