**STATE of Minnesota, Respondent,**

v.

**Wilfred James HINES, Appellant.**

**No. C9–90–29.**

Court of Appeals of Minnesota.

Aug. 7, 1990.

Review Denied Sept. 28, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Mark D. Nyvold, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and RANDALL, and SCHULTZ,* JJ.

## OPINION

RANDALL, Judge.

Appellant Wilfred James Hines was convicted of unlawfully possessing cocaine with intent to distribute in violation of Minn.Stat. § 152.15, subd. 1(2) (1988). On appeal he challenges admission of the statements of his alleged co-conspirator, "Bogie" or Donald James Bogenreif; his trial attorney's failure to withdraw so that he could provide testimony which appellant claims was crucial to his defense; and the trial court's instruction to the jury on reasonable doubt. We affirm.

## FACTS

On May 19, 1989, a confidential reliable informant told Michael Isaac he had given Isaac's pager number to an individual interested in purchasing cocaine. Isaac, a Ramsey County Deputy Sheriff with about 12 years experience, was working undercover as a seller of large amounts of cocaine.

Later that afternoon, Isaac's pager beeped. Isaac called the number which appeared on the pager display and spoke to a person identifying himself as "Bogie." It was later learned that the number, 690–3722, was listed to a Brian Haukeness on Maynard Drive in St. Paul.

Isaac told Bogie he would sell him a pound of cocaine for $9000. Bogie stated he did not have enough money but would call Isaac back after he talked with his money man, who was named James. During a phone conversation later that evening, Bogie told Isaac, "I'm picking it up for another person. I'm just the spokesperson." Bogie further informed Isaac the other person on the deal would want to look at the cocaine and would be driving the car.

Isaac called Bogie the next day, and the two decided to meet in the parking lot of the Country Inn in White Bear Lake. Bogie told Isaac he would be in James's car, which he described as an '84 or '85 silver Buick with a "fake rag top." Bogie then gave Isaac a description of himself. Isaac indicated he would not be getting out of his car, and Bogie agreed: "No. I don't want you to get out of the car, okay. I'll bring him a little bit to look at and then come back to you with the money." The conversation ended with the two agreeing to meet in 45 minutes.

Isaac proceeded to get a pound of cocaine from seized evidence, which he put in a plastic ziplock bag and then in a brown paper bag. He assembled a number of other officers to provide surveillance and protection, and they all proceeded to the Country Inn.

When they arrived, no one was there. After a few minutes, a silver Buick drove into the lot and parked approximately twenty feet away from Isaac's automobile. Driving the Buick was appellant Wilfred James Hines, who is sometimes called "James" by his friends and relatives. In the passenger seat was Donald James Bogenreif, who appeared and dressed as Bogie had described over the phone.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Bogenreif walked over to Isaac's car, and got in the passenger seat. Isaac testified Bogenreif's voice was the same one he had heard over the phone. Bogenreif gave Isaac $500, and in return Isaac filled a paper bindle or a small folded envelope with a small amount of cocaine. Bogenreif then took the bindle back to the Buick and got into the passenger seat. Neither Isaac nor the other assisting officers could see in detail what transpired in the Buick. They all testified, however, that Bogenreif and appellant turned toward each other, leaned in the direction of the center console, and appeared to be talking to each other.

Bogenreif then exited the Buick with a large paper bag hidden under his shirt, and returned to Isaac's car and got in. Bogenreif told Isaac that he and James thought the sample looked good. Bogenreif opened his paper bag to show Isaac the rest of the money. Isaac gave Bogenreif the cocaine and insisted on counting the money, which was the prearranged arrest signal.

After appellant and Bogenreif were arrested, the officers found the bindle Isaac had given Bogenreif on the center console of the Buick. The bindle was closed, but Isaac testified it could be easily opened and shut.

At trial, Isaac agreed there was no confusion in his mind that the person who was going to be with Bogie at the Country Inn was the person providing the money for the cocaine deal. A criminologist analyzed the contents of both the bindle and the ziplock bag, and testified he detected the presence of cocaine in each. The only evidence checked for fingerprints was the brown paper bag containing the money; the investigator who had analyzed the bag testified the only identifiable print he found positively matched appellant's right thumbprint.

The defense presented one witness, Brian Haukeness. Haukeness testified his phone number is 690-3722, and that Bogenreif had made several calls from his house on May 19. Haukeness further testified on May 20 he had offered to give Bogenreif a ride. On the way, Haukeness and Bogenreif stopped at appellant's house to jump start appellant's car. Haukeness testified when he started running late and had to get home, he asked appellant to give Bogenreif a ride to White Bear Lake.

## ISSUES

1. Did the trial court err in admitting the statements of appellant's alleged co-conspirator?

2. Was appellant denied a fair trial by defense counsel's failure to withdraw from the trial?

3. Did the trial court prejudicially err in instructing the jury on reasonable doubt?

## ANALYSIS

### I

*Conspiracy*

At trial, Isaac was allowed to testify concerning Bogenreif's statements. Bogenreif did not testify. The state offered his statements to show appellant had supplied the money to purchase the cocaine and thereby aided and abetted Bogenreif in possession with intent to distribute cocaine. Appellant objected, claiming: 1) no adequate foundation had been established to admit Bogenreif's statements under Minn. R.Evid. 801(d)(2)(E); and 2) admission of the statements denied him his constitutional right to confront and cross-examine.

Rule 801(d)(2)(E) provides a statement is not hearsay if it is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Rather than being an exception to the hearsay rule, statements of a co-conspirator, once a conspiracy is proven, stand on their own two feet. However, "[w]hether such statements are termed exemptions or exceptions, the same Confrontation Clause principles apply." *United States v. Inadi*, 475 U.S. 387, 399 n. 12, 106 S.Ct. 1121, 1128 n. 12, 89 L.Ed.2d 390 (1986).

A. Inadequate foundational proof of conspiracy

Appellant first argues that the state failed to prove its prima facie case of a conspiracy by evidence *independent* of the

alleged co-conspirator's statements. *See State v. Thompson*, 273 Minn. 1, 16, 139 N.W.2d 490, 503 (1966), *cert. denied*, 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966). Without Bogenreif's statements, the only evidence that appellant had entered into a conspiracy was that he appeared in the parking lot where the cocaine transaction was to occur, that he appeared to talk to Bogenreif when Bogenreif returned from Isaac's car with a bindle of cocaine, and that appellant's thumb print appeared on the bag containing the money. This evidence merely establishes appellant's presence at the scene of the crime. Prima facie proof of involvement in a conspiracy cannot rest on such slender evidence. *State v. Jenkins*, 411 N.W.2d 504, 506 (Minn.App. 1987) (holding that undercover police officer's on the scene observations were sufficient to establish independent evidence of conspiracy).

■ However, the Supreme Court has recently held that "a court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted." *Bourjaily v. United States*, 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987). *Bourjaily* has been followed by this court in *State v. Brown*, 455 N.W.2d 65, 69 (Minn.App.1990), *pet. for rev. denied* (Minn. July 6, 1990). In determining whether a conspiracy exists, a trial court may thus consider the statements of the alleged co-conspirator.

■ In this case, Bogenreif's statements were made during five telephone calls to Isaac. In those conversations, Bogenreif identified his money man as "James." Bogenreif informed Isaac that James would be driving a silver Buick to the site of the purchase and that James would remain in his car but wanted to examine the cocaine for quality prior to delivery of the rest of the money. The transaction took place exactly as Bogenreif had said it would. *See Bourjaily*, 483 U.S. at 180–181, 107 S.Ct. at 2781 (transaction took place as co-conspirator and government informant had planned). Given this evidence, the trial

court's determination that a conspiracy existed was not clearly erroneous.

### B. Denial of right to confrontation

■ Under *Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980), a two-step analysis is used for determining whether the use of out-of-court statements violates the confrontation clause: 1) the need for the statement based on the unavailability of the declarant and 2) whether the statement possesses an adequate indicia of reliability, which can be inferred where the statement falls within a "firmly-rooted hearsay exception."

However, the United States Supreme Court has recently held that the confrontation clause does not require a showing of unavailability as a prerequisite to admitting a nontestifying co-conspirator's statements. *Inadi*, 475 U.S. at 399–400, 106 S.Ct. at 1128–29. *Inadi* has been followed by this court in *Brown*, 455 N.W.2d at 69 and *Jenkins*, 411 N.W.2d at 510. Even more recently, the Court held that reliability can be inferred without more if the declarations fall within the co-conspirator exception to the hearsay rule. *Bourjaily*, 483 U.S. at 183, 107 S.Ct. at 2782. Here, following the U.S. Supreme Court, admission of Bogenreif's statements did not implicate appellant's constitutional rights to confrontation.

## II

### *Defense Counsel as Witness*

■ During an in-chambers discussion on the admissibility of Bogenreif's statements, the following conversation took place:

[Defense counsel.] Second, Mr. Bogenreif contacted me at home just after he got out telling me that my client had nothing to do with it. Now, I knew he [appellant] was going to have difficulty trying to prove this, that he [appellant] had nothing to do with it and he [Bogenreif] was prepared to come forward and exonerate my client in this particular matter.

[Prosecutor.] First of all, I would ask that this is an appropriate time perhaps for mistrial. This is the first I have heard that [defense counsel] has made himself a witness in this case, that he had conversation with Mr. Bogenreif concerning this case, and that he is a potential witness in this case.

When the trial court ruled that defense counsel would not be allowed to testify as to what Bogenreif had told him, defense counsel replied that he did not want to testify and that he "was just addressing the point of the hearsay."

Now, for the first time on appeal, appellant argues the trial court's ruling that defense counsel could not testify and defense counsel's failure to withdraw so that he could qualify as a witness denied appellant his rights to due process and a fair trial. However, Bogenreif's statement to defense counsel would not have been admissible under Minn.R.Evid. 801(d)(2)(A), which provides a statement is not hearsay if it is offered against a party and is his own statement. Bogenreif's statement to defense counsel is not appellant's own statement and would not have been offered by the state, the opposing party here, but by appellant himself. Nor would Bogenreif's statement be admissible under Minn. R.Evid. 804(b)(3). Bogenreif is already a co-defendant who is involved. *See State v. Hansen,* 312 N.W.2d 96, 101 (Minn.1981) (circumstances under which the statement is made must be "so far contrary to the [declarant's] interest that a reasonable person in his position would not have made the statement unless he believed it to be true.") Because Bogenreif's statement would have been inadmissible hearsay, defense counsel had no obligation to withdraw to attempt to get that statement in, and appellant suffered no prejudice.

### III

*Jury Instructions*

■ Also for the first time on appeal, appellant challenges the jury instruction on reasonable doubt.

Where no objection is made to the jury instruction, the alleged error must be one of fundamental law or controlling principle, and it must substantially and materially prejudice the defendant's rights. *Peterson v. State,* 282 N.W.2d 878, 881 (Minn.1979).

Appellant argues the court erred when it instructed the jury that proof beyond a reasonable doubt was the kind of evidence that would "guide" them in making the most important decisions in their lives, instead of what evidence a person would "act" upon. *See* 10 Minnesota Practice, CRIM. JIG, 3.03 (1985) ("Proof beyond a reasonable doubt is such proof as ordinarily prudent men and women would *act* upon in their most important affairs.") When read as a whole, however, the instructions sufficiently explain the prosecution's burden of proof. *See State v. Sap,* 408 N.W.2d 638, 641 (Minn.App.1987). The trial court's substitution of the word "guide" for the word "act," although not a recommended instruction, did not prejudicially dilute the instruction on the burden of proof. The proper standard on burden of proof was communicated to the jury.

### DECISION

Affirmed.